BOARD OF EDUCATION OF THE HAMILTON CITY SCHOOL DISTRICT, APPELLEE, *v.* HAMILTON CLASSROOM TEACHERS ASSOCIATION ET AL., APPELLANTS.

(No. 81-02-0012—Decided August 11, 1982.)

*Mr. Carl Morgenstern,* for appellee.
*Mr. James R. Kirkland,* for appellants.

CORRIGAN, P.J. Appellee, the Board of Education of the Hamilton City School District, brought this action seeking to enjoin appellants, teachers of said school system, from engaging in a strike and from obstructing access to and from school buildings. A temporary restraining order (TRO) was issued upon appellee's verified complaint and subsequent to a hearing in which counsel for both parties participated. Two days later, on November 19, 1980, another hearing was held on appellee's motion for a second TRO and the court issued a limited picketing order.

Later evidence revealed that teachers disobeyed the court's orders and thirty-nine of the teachers, appellants herein, were found guilty of contempt after a lengthy hearing covering approximately three hundred pages of transcript. Sentences imposed on the teachers varied, depending upon whether each was found to have violated the limited picketing order. All thirty-nine were fined $315 for violation of the back-to-work order of November 17, 1980 ($15 per each day of violation) and twenty-seven of these were fined an additional $100 for violation of the limited picketing order.

This timely appeal followed, assigning the following errors for review:

"I. The trial court erred to the prejudice of the defendants in granting a temporary restraining order to precede a preliminary injunction when the plaintiff could not meet the elements required for an injunction, namely a showing of: (1) an inadequate remedy at law, (2) irreparable injury, and (3) presence of a clear right to an injunction.

"II. The trial court erred to the prejudice of defendants-appellants by maintaining the joinder of defendant parties when individual defendants had separate issues of fact and law.

"III. The court violated procedural due process guarantees when it conducted a mass trial, presumed guilt, and upon an insufficiency of the evidence found all defendants guilty of contempt.

"IV. The trial court erred to the prejudice of the defendants by summarily finding each defendant in contempt when facts showed defendants were involved in varying degrees; such lack of tailor-made sentences shows the arbitrariness of the court's decision on the contempt charges."

I

Appellants argue in the first assignment of error that the court erred in gran-

ting a temporary restraining order. First, appellants suggest that the existence of legal remedies provided in the Ferguson Act rendered any equitable relief in the form of a temporary injunction improper. They also argue that appellee had no right to a temporary injunction to force teachers back to work.

These issues have been dealt with in *Goldberg* v. *Cincinnati* (1971), 26 Ohio St. 2d 228 [55 O.O.2d 468], in which the court held that strikes by public employees are prohibited and may be enjoined. Further, the court stated that "the [Ferguson] Act does not purport to affect the power of the Court of Common Pleas to enjoin common law strikes by public employees." *Id.* at 234.

In another Ohio case, the Court of Common Pleas of Belmont County granted a temporary restraining order prohibiting the Martins Ferry teachers from refusing to perform the terms of their contracts and from interfering with the operation of the school district. *Bd. of Edn.* v. *Ohio Edn. Assn.* (1967), 13 Ohio Misc. 308 [42 O.O.2d 383]. The court held that a board may obtain an injunction against its teachers acting in concert to refuse to perform the terms of their contracts in violation of R.C. 4117.01 *et seq.* In addition, the court quoted the "very well reasoned" opinion of Judge Artl in *Cleveland* v. *Division 268* (App. 1949), 57 Ohio Law Abs. 173 [41 O.O. 236], in which the judge pointed out that the power of the court to enjoin an unlawful act does not stem alone from the Ferguson Act, but is an inherent right in the court of equity. Thus, the existence of the remedies provided in the Ferguson Act does not preclude the issuance of a temporary restraining order.

We also doubt the wisdom of appellants even asserting that their employment should have been terminated pursuant to R.C. 4117.05, and, upon reinstatement, placed on probation for two years, without tenure and without any salary increase for at least one year.

R.C. 4117.03.[1] The court, on the other hand, wisely balanced the interests of all parties and imposed the least burdensome remedy, seeking only to maintain the status quo until a final decision on the merits could be reached.

Next, appellants maintain that appellee failed to show the irreparable harm required before a temporary injunction may issue. In support of their position, appellants cite three cases outside of Ohio in which the flexibility of the school calendar and disruption of a school schedule were factors which were considered in the denial of temporary injunctions. However, there is no controlling Ohio case which holds that disruption of a school schedule is insufficient grounds for the issuance of an injunction. As the Ohio Supreme Court stated in *Goldberg* v. *Cincinnati, supra,* at 233:

"At common law, strikes by public employees are uniformly illegal. The courts have prohibited such concerted activity by public employees because of its interference with the paramount public interest in the unimpeded performance of essential governmental functions."

Moreover, the Stark County Court of Appeals faced this issue when fourteen school teachers appealed their sentences for criminal contempt arising out of violation of a temporary injunction. *In re White* (1978), 60 Ohio App. 2d 62 [14 O.O.3d 34]. In addressing the teachers' argument that the TRO was improvidently granted, the court determined:

"Accordingly, we state again what has been settled and clear since the founding of the republic. The temporary injunction was valid. Public employee strikes are illegal and may be enjoined. Our Ohio Supreme Court said so as recently as 1971, in *Goldberg* v. *Cincinnati* (1971), 26 Ohio St. 2d 228 [55 O.O.2d 468].

"But legal or illegal, the United

---

[1] The Ferguson Act is R.C. 4117.01 *et seq.*

States Supreme Court in the *United Mine Workers* case cited above said:

" 'The interests of orderly government demand that respect and compliance be given to orders issued by courts possessed of jurisdiction of persons and subject matter. One who defies the public authority and willfully refuses his obedience, does so at his peril. In imposing a fine for criminal contempt, the trial judge may properly take into consideration the extent of the willful and deliberate defiance of the court's order, the seriousness of the consequences of the contumacious behavior, the necessity of effectively terminating the defendant's defiance as required by the public interest, and the importance of deterring such acts in the future. Because of the nature of these standards, great reliance must be placed upon the discretion of the trial judge.' " *Id.* at 68-69 (quoting *United States* v. *United Mine Workers of America* [1947], 330 U.S. 258).

Likewise, we place great reliance upon the discretion of the trial judge. Not only did the judge consider appellee's verified petition which alleged that appellants' actions have caused or will cause the disruption of instruction and both the public and the students have suffered or will continue to suffer great and irreparable damage, but he also heard appellee's arguments in support of and appellants' arguments against issuance of the order at the November 17th hearing. The concept of future irreparable injury is far from well-defined or concrete. Hence, we find no abuse of discretion in the court's granting of the temporary restraining order subsequent to the hearing.

Furthermore, we note that appellants, like the teachers of *In re White,* made no attempt to set aside the temporary injunction, but instead followed with "immediate and massive disobedience" of the order. An order issued by a court with jurisdiction must be obeyed until it is reversed by orderly and proper proceedings. *United Mine Workers, supra,* at 293.

For the above reasons, the first assignment of error is overruled.

## II

In the second assignment of error appellants argue that the format of the trial, by maintaining joinder, did not safeguard the individual rights of appellants from confusion of testimony and prejudice of procedure. Appellants argue that their motion for separate trials should have been granted because there were separate issues of fact surrounding each teacher's alleged violation. We find no merit in appellants' argument for a number of reasons.

First, the trial judge allowed appellants to have their own individual counsel present, and the record reveals that at least three of the appellants took advantage of this opportunity. While it is true that each co-counsel did not cross-examine appellee's twenty-eight witnesses, the judge stated that he would allow such cross-examination upon a showing of good cause. In fact, one co-counsel did participate in final argument, and the record is silent as to any request by the other co-counsel to also participate. Thus, we find that the court allowed individual representation and argument for each appellant and no prejudice resulted from its denial of separate trials.

Secondly, we feel that a great burden on the judicial system would result if separate trials were held simply because thirty-nine people violated the same court orders but at different times and places. Our thorough review of the record shows that appellants were given a full and fair opportunity to litigate the issues involved and to present contrary evidence if any existed. Appellants called only one witness, the vice-president of the school board, and her testimony in no way aided appellants' cause. Nevertheless, the opportunity to defend each appellant existed.

Thirdly, the Ohio Supreme Court in *In re Calhoun* (1976), 47 Ohio St. 2d 15, 17 [1 O.O.3d 10], reviewed an appellant-contemnor's alleged due process violation and found that appellant "enjoyed the full panoply of due-process accouterments, save the claimed right to be provided with counsel." The court then cited the United States Supreme Court's most recent statement upon due process rights of alleged contemnors, in which the court admonished that, "all we have decided today is that a contemnor is entitled to the elementary due process protections of 'reasonable notice of the specific charges and opportunity to be heard in his own behalf,' *supra,* at 499, neither of which petitioner received. Nowhere do we intimate that 'a full-scale trial is appropriate.' " *Taylor* v. *Hayes* (1974), 418 U.S. 488, 500, at fn.9. Thus, we find that appellants enjoyed the full panoply of due process protections, save the claimed right to separate trials. However, they were granted the opportunity to be heard in their own behalf, as was their right, and we, therefore, overrule the second assignment of error.

### III

Appellants' third assignment of error charges that there was insufficient evidence upon which to find guilt beyond a reasonable doubt.

During the contempt hearing, co-counsel for appellants, Mr. Garretson, asked the court, "Of what burden of proof are we laboring under here?" The court responded, "It's clear and convincing * * *." Mr. Garretson then urged upon the court, in essence, that whenever one's liberty is in jeopardy, it is a criminal proceeding and, therefore, must afford one certain protections, such as requiring proof beyond a reasonable doubt. The court responded, "Well, that's not the law."

Appellants' counsel renewed this line of argument during oral argument before this court. He argued that appellants relied on the criminal burden of proof, beyond a reasonable doubt, and, therefore, felt no need to put forth any evidence as appellee failed to meet this burden. Although appellants' reliance is misplaced, in view of the court's response that the standard was "clear and convincing," we, nevertheless, find merit in this assignment of error based on the court's error in holding that the appropriate standard was "clear and convincing."

In *Brown* v. *Executive 200* (1980), 64 Ohio St. 2d 250 [18 O.O.3d 446], the Supreme Court sets forth the test to be applied in determining the required burden of proof for the violation of a prohibitory injunction, which may amount to both civil and criminal contempt. It is possible for a trial court to impose both types of sanctions to punish for both the civil and criminal contempt aspects of a particular case. For this reason, as the court states, we should look at the nature of the various penalties in order to ascertain if they are criminal or civil.

"While both types of contempt contain an element of punishment, courts distinguish criminal and civil contempt not on the basis of punishment, but rather, by the character and purpose of the punishment. *Gompers* [v. *Bucks Stove & Range Co.* (1911), 221 U.S. 418], *supra;* [*State* v.] *Kilbane* [(1980), 61 Ohio St. 2d 201 (15 O.O.3d 221)], *supra.* Punishment is remedial or coercive and for the benefit of the complainant in civil contempt. Prison sentences are conditional. The contemnor is said to carry the keys of his prison in his own pocket, *In re Nevitt* (C.A. 8, 1902), 117 F. 448, 461, since he will be freed if he agrees to do as ordered. Criminal contempt, on the other hand, is usually characterized by an unconditional prison sentence. Such imprisonment operates not as a remedy coercive in its nature but as punishment for the completed act of disobedience, and to vindicate the authority of the law and the court. See, generally, *Gompers, supra; Bd. of Edn.* v. *Brunswick Edn. Assn.*

(1980), 61 Ohio St. 2d 290 [15 O.O.3d 352]; *State* v. *Local Union 5760* (1961), 172 Ohio St. 75, at 82-83 [15 O.O.2d 133]. Therefore, to determine if the sanctions in the instant cause were criminal or civil in nature, it is necessary to determine the purpose behind each sanction: was it to coerce the appellees to obey the consent judgment decree, or was it to punish them for past violations?" *Brown, supra,* at 253-254.

From a review of the entire record in the instant case, the fine imposed on each appellant must be considered punishment for criminal contempt. The fact that it is a criminal contempt penalty is apparent on its face, as the fine cannot coerce compliance, nor is it remedial, but rather is a punishment for completed acts of disobedience. "Its purpose is to vindicate the authority of the court and the law." *Brown, supra,* at 255, citing *Gompers* v. *Bucks Stove & Range Co.* (1911), 221 U.S. 418. The lower court made it clear that this was criminal contempt when in its order of sentencing, it stated: "[I]t was the administration of justice which was flaunted, embarrassed, and defied. That is why we are here today * * *. We are here to vindicate our system of judicial procedure * * *."

Due to the fact that the fines are criminal penalties, they can only be imposed upon proof of guilt beyond a reasonable doubt. *Michaelson* v. *United States* (1924), 266 U.S. 42; *Pease Co.* v. *Local Union 1787* (1978), 59 Ohio App. 2d 238, 242 [13 O.O.3d 246]. Thus, the trial court erred in imposing the fines based upon the standard "clear and convincing" rather than requiring proof of guilt beyond a reasonable doubt. To paraphrase the language used in *Brown, supra,* at 253, it is indeed possible that there was sufficient uncontroverted evidence for the trial judge to find the appellants guilty of contempt beyond a reasonable doubt, but we cannot reach such a conclusion in light of the indication by the trial judge that he was employing the "clear and convincing" standard.

The third assignment of error is well taken.

### IV

Finally, appellants argue that the court summarily found them guilty and failed to tailor their sentences according to the varying degrees of their involvement in the violations. We previously discussed the obvious fallacy of any alleged summary finding, and we see no merit in the latter argument either. On the contrary, the court tailored the sentences to fit each violator — $15 per day for violating the first restraining order and $100 for violating the limited picketing order. Those individuals who were not positively identified as picket violators were sentenced for violating just the first order. There was no evidence indicating that any of the thirty-nine appellants discontinued his violation of the back-to-work order during the twenty-one-day strike. Thus, the court properly considered the facts established at trial in sentencing appellants and the fourth assignment of error is overruled.

In light of the clear and convincing burden of proof employed by the court in finding the appellants guilty of criminal contempt, the judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed
and cause remanded.*

PATTON and CELEBREZZE, JJ., concur.

CORRIGAN, P.J., PATTON and CELEBREZZE, JJ., of the Eighth Appellate District, sitting by assignment in the Twelfth Appellate District.