CITY OF BEDFORD, APPELLEE, *v.*
LACEY; AGOPIAN, APPELLANT.

(Nos. 49270, 49338 to 49342 — Decided
August 12, 1985.)

*Thomas Longo,* for appellee.
*Richard Agopian, pro se.*

JACKSON, J. Appellant Richard Agopian, an attorney, appeals his conviction of contempt of court imposed by the Garfield Heights Municipal Court. For the reasons stated more fully below, we hold that the Garfield Heights Municipal Court lacked jurisdiction to issue the order on which the contempt proceeding was based.

Appellant Agopian represented defendant Vickie Lacey. Lacey was charged by complaint in the Bedford Municipal Court with criminal offenses of theft, resisting arrest, disorderly conduct, criminal trespass, and assault.

Trial commenced in the Bedford Municipal Court on March 13, 1984. Lacey was found guilty of the charges of resisting arrest and disorderly conduct. She was found not guilty of criminal trespass and assault. The theft charge was dismissed.

On March 26, 1984, Lacey filed a motion to set aside the conviction or in the alternative to grant a new trial. In the motion, Lacey charged that the trial judge had entered the jury room in the absence of the defendant and counsel for both parties and further instructed the jury on the charge of disorderly conduct. Two jurors submitted affidavits wherein they stated that "[the trial judge] then gave an example of what he meant, and after he gave his example we the jury felt that we had no choice but to convict the defendant of disorderly conduct and we returned a guilty verdict."

On March 27, 1984, the trial court issued a statement of the facts and entered the following order:

"It is therefore the order of this Court that every consideration as to a fair and impartial trial should be resolved to the benefit of the defendant.

"The Court does not agree that there is prejudicial error on the face of the trial which would inure to the detriment of the defendant, but agrees that where some act may be construed to appear as such it should be resolved in favor of the defendant.

"Therefore this Court will grant a new trial to the defendant as to the issues before the Court, Vacate the Judgments rendered on March 14, 1984, suspend all Costs and by separate documents the Judges of this Court will disqualify themselves from hearing these cases and order them forwarded to the Administrative Judge of the Common Pleas Court for reassignment for immediate Jury Trial in another Municipal Court."[1]

On April 2, 1984, the presiding judge of the court of common pleas, acting pursuant to R.C. 2937.20, assigned the case to Judge Stralka of the Garfield Heights Municipal Court. The files pertaining to this matter were thereafter transferred to the Garfield Heights Municipal Court.

On June 21, 1984, Judge Andrew Slivka[2] issued an order that appellant Agopian and defendant Lacey appear before him on June 26, 1984 to show cause why they should not be held in contempt for not appearing at a guilty plea and sentencing hearing that had been scheduled for June 21, 1984.

On June 26, 1984, following a hearing off the record, appellant Agopian was found guilty of contempt and or-

---

[1] The court issued another order dated March 27, 1984, signed by both Judge Zingales and Judge Reed:

"These matters came on for hearing on March 27, 1984, upon the Court's own Motion. In accordance with Section 2937.20 of the Ohio Revised Code, Presiding Judge Joseph A. Zingales and Judge Rodney H. Reed, sitting in the Criminal Division, hereby disqualify themselves in this action.

"It is therefore ordered that the Clerk of Court notify the Chief Justice of Common Pleas Court and forward the within causes to him for further proceedings and reassignment to another Court."

[2] The record discloses that on several occasions during the proceedings in Garfield Heights Municipal Court, different judges presided over this case. Judge Stralka presided over appellant's contempt hearing. "[R]eassignment of any case must be accompanied by a journal entry executed by the administrative judge which states a justifiable reason for transferring responsibility for the case to another judge. Absent such an entry, the judge assuming to act has no authority and his rulings are voidable on timely objection by any party." *Berger* v. *Berger* (1981), 3 Ohio App. 3d 125, 130, 3 OBR 141, 147, 443 N.E.2d 1375, 1381.

Appellant has not objected to the reassignment procedures used herein. Consequently, he has waived any objection. *Berger, supra.*

dered to pay a fine of $250 and sentenced to five days' confinement, five days suspended. The court issued a "Finding and Opinion" wherein it stated that the reason for appellant's contempt conviction was appellant's intentional actions to delay the administration of justice. See Appendix, *infra,* at 9-11. The conduct referred to was the failure by appellant to attend the aforementioned June 21, 1984 hearing. The court apparently also found a delay in the administration of justice when defendant Lacey changed her plea from guilty to not guilty during a hearing on the guilty plea. The guilty plea hearing was held during a continuance of the contempt hearing. After the contempt proceedings were resumed, appellant sought to file instanter a handwritten affidavit of prejudice. The trial court overruled the affidavit of prejudice on the grounds that it was not timely filed. Appellant appeals his contempt conviction and assigns two errors for review.

"I. The trial court erred in finding that appellant's counsel was guilty of a contempt of court.

"II. The trial judge erred in failing to remove himself after an affidavit of prejudice was filed."

I

Neither party has raised the issue of whether the Garfield Heights Municipal Court had jurisdiction to proceed in this matter. Nevertheless, the court is persuaded that the transfer of this case from Bedford Municipal Court to Garfield Heights Municipal Court was improper and the Garfield Heights Municipal Court was thereby deprived of jurisdiction.[3]

Municipal courts are statutory

---

[3] The concurring opinion differs with the majority in that it determined that the Garfield Heights Municipal Court did have jurisdiction over the underlying criminal case. It cites *Cleveland* v. *Willis* (M.C. 1980), 63 Ohio Misc. 40, 43, 17 O.O.3d 385, 387-388, 410 N.E.2d 823, 826, and *State, ex rel. Sowell,* v. *Lovinger* (May 3, 1984), Cuyahoga App. No. 45529, unreported, in support, and concludes that "[v]oluntary recusal by both judges in the Bedford Municipal Court had the same legal effect as unopposed affidavits of prejudice regarding their service."

This writer has been unable to find support for this proposition in *Cleveland* v. *Willis, supra, State, ex rel. Sowell, supra,* or any other Ohio case.

In the case at bar there was no valid affidavit of prejudice involved. The judges of the Bedford Municipal Court voluntarily recused themselves. However, the *Sowell* litigation was triggered by the filing of a timely affidavit of prejudice.

The following is a summary of the *Sowell* case:

In the *Sowell* case, the relators brought a lawsuit against the city of Shaker Heights and several individuals as a result of a "point-of-sale" housing inspection conducted by the municipality on property purchased by them. The lawsuit was filed in the Shaker Heights Municipal Court. (*Sowell* v. *Trotter,* No. CIF 8276.) Paul R. Donaldson, then director of law for the city, represented defendant city of Shaker Heights in that litigation. In September 1981, Judge Manuel Rocker was the sitting Judge of the Shaker Heights Municipal Court, and he issued a published opinion in which he held that defendants Shaker Heights et al. were not entitled to raise the defense of sovereign immunity, and overruled their motion to dismiss.

Subsequently, Judge Rocker retired and Donaldson was elected to the position of Judge of the Shaker Heights Municipal Court. He began service January 1, 1982. On February 22, 1982, defendant city of Shaker Heights filed a motion for leave to file motion for summary judgment and motion for summary judgment. On February 23, 1982, the Sowells filed an affidavit of prejudice against Judge Donaldson.

On February 24, 1982, despite the affidavit of prejudice, Judge Donaldson appointed Daniel Lovinger, a lawyer, as acting judge in the *Sowell* case. Also, on February 24, 1982, Acting Judge Lovinger granted

courts and their territorial jurisdiction may not be enlarged except by statute. Thus, the "Garfield Heights municipal court has jurisdiction within the municipal corporations of Maple Heights, Walton Hills, Valley View, Cuyahoga Heights, Newburgh Heights, Independence, and Brecksville in Cuyahoga county." R.C. 1901.02. The offenses for which defendant Lacey was charged arose in the municipality of Bedford. Therefore, unless some statute authorized the transfer, Garfield Heights Municipal Court lacked territorial subject matter jurisdiction to proceed with the trial of the criminal charges against defendant Lacey. It is apparent that if Garfield Heights Municipal Court lacked

jurisidiction to issue the order upon which the contempt proceeding against appellant Agopian was based (*i.e.,* the order setting a guilty plea and sentencing hearing on June 21, 1984), the resulting contempt conviction for its disobedience would be invalid. See *State, ex rel. Couglin,* v. *Cunningham* (Feb. 17, 1972), Cuyahoga App. No. 30763, unreported; *Amato* v. *Abbford, Inc.* (Jan. 24, 1985), Cuyahoga App. No. 48816, unreported.

The Bedford Municipal Court judges acted pursuant to R.C. 2937.20 when they disqualified themselves and transferred the case to the presiding judge of the common pleas court for reassignment. A review of R.C. 2937.20, however, indicates that this section of

defendant Shaker Heights' motion for leave to file a motion for summary judgment.

The Clerk of the Shaker Heights Municipal Court did not transmit the file and affidavit of prejudice to the presiding judge of the court of common pleas as required by R.C. 2937.20. Consequently, the Sowells, on March 9, 1982, filed an application for a writ of prohibition and writ of mandamus with the Eighth District Court of Appeals (case No. 45095). Thereafter, however, the Shaker Heights Clerk of Court did submit the file of the *Sowell* case to Presiding Judge Spellacy and, on March 11, 1982, the court of appeals, after having been "advised that respondents are forwarding the affidavit of prejudice to the administrative judge * * *," dismissed the action at relators' costs.

On March 12, 1982, Presiding Judge Leo M. Spellacy appointed Daniel Lovinger as acting judge to hear and decide the *Sowell* v. *Trotter* case. This was the same attorney appointed by Judge Donaldson.

Subsequently, the Sowells filed their second petition for extraordinary writs in the court of appeals on this matter. In their complaint, the Sowells sought a writ of prohibition against acting Judge Lovinger ordering him to refrain from presiding over the *Sowell* case, and a writ of mandamus against Judge Spellacy ordering him to designate a duly qualified judge to hear and determine the case instead of Lovinger.

The city of Shaker Heights filed a motion to dismiss the Sowells' petition. This court of appeals granted Shaker Heights' motion to dismiss the Sowells' petition on the ground that the Sowells had an adequate remedy at law.

Upon appeal to the Ohio Supreme Court, the decision of this court of appeals was reversed and remanded for further proceedings. *State, ex rel. Sowell,* v. *Lovinger* (1983), 6 Ohio St. 3d 21, 6 OBR 18, 450 N.E. 2d 1176.

Thereafter, the Chief Justice of the Ohio Supreme Court designated a visiting panel of judges to determine the *Sowell* case on remand rather than the original panel from this court. That panel ruled that Judge Donaldson should have disqualified himself as judge for hearing the *Sowell* case, pursuant to Canon 3(C), Code of Judicial Conduct, *even if no affidavit of prejudice was filed against him.* This panel further ordered a writ of prohibition against Acting Judge Daniel L. Lovinger ordering him to refrain from hearing or determining any matter in the *Sowell* case. It further ordered a writ of mandamus against Presiding Judge Leo M. Spellacy and ordered him to designate, without delay, another judge pursuant to R.C. 2937.20 to hear and determine the *Sowell* case. *State, ex rel. Sowell et al.,* v. *Lovinger et al.* (May 3, 1984), Cuyahoga App. No. 45529, unreported.

the Revised Code applies only when an affidavit of prejudice is filed by the party or his counsel. If the presiding judge of the court of common pleas determines that prejudice exists, "he shall designate another * * * judge of *said inferior court*,[4] or the court of common pleas to hear and determine said cause.* * *" (Emphasis added.) R.C. 2937.20. R.C. 2937.20 does not contain a provision applicable to judges who disqualify themselves.

Pursuant to Canon 3(C)(1), Code of Judicial Conduct, a "judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned."[5] There is, however, no procedure for disqualification in Canon 3(C). Nor is there any statute which provides the procedure for appointment of a judge when all of the judges on a particular court have voluntarily disqualified themselves.

This court is convinced that the power to appoint a judge to a municipal court wherein all of its judges have disqualified themselves rests solely with the Chief Justice of the Ohio Supreme Court, rather than the presiding judge of the court of common pleas. There is a constitutional basis for this conclusion. Pursuant to Sections 5(A)(3) and (C), Article IV of the Ohio Constitution:

"(3) The chief justice or acting chief justice, as necessity arises, shall assign any judge of a court of common pleas or a division thereof temporarily to sit or hold court on any other court of common pleas or division thereof or any court of appeals or shall assign any judge of a court of appeals temporarily to sit or hold court on any other court of appeals or any court of common pleas or division thereof and upon such assignment said judge shall ·serve in such assigned capacity until the termination of the assignment. *Rules may be adopted to provide for the temporary assignment of judges to sit and hold court in any court established by law.*

"* * *

"(C) The chief justice of the supreme court or any judge of that court designated by him shall pass upon the disqualification of any judge of the courts of appeals or courts of common pleas or division thereof. *Rules may be adopted to provide for the hearing of dis-*

---

[4] Even it it were determined that R.C. 2937.20 applied when a judge disqualifies himself, it is apparent that the term "said inferior court" means that the case shall be transferred back to the court which originally had jurisdiction, *i.e.*, the Bedford Municipal Court in this instance.

[5] Canon 3 provides in part:
"C. Disqualification
"(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:
"(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
"(b) he served as a lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the mat-ter, or the judge or such lawyer has been a material witness concerning it;
"(c) he knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a substantial financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;
"(d) he or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
"(i) is a party to the proceeding, or an officer, director, or trustee of a party;
"(ii) is acting as a lawyer in the proceeding;
"(iii) is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;
"(iv) is to the judge's knowledge likely to be a material witness in the proceeding.
"* * *"

*qualification matters involving judges of courts established by law.*" (Emphasis added.)

Thus, these sections of the Ohio Constitution provide that *the Chief Justice of the Ohio Supreme Court has the authority to decide who does have the appointment power with respect to a municipal court judge who has disqualified himself.* In the absence of a statute or rule which expressly grants the appointive authority to some other court, a ruling by the court of appeals purporting to divest the superior court of this state of power which it alone may grant, would not only be a nullity, but it would also constitute a grievous judicial affront to the Supreme Court. Our decision is consistent with R.C. 1901.10 which grants the Chief Justice the authority to fill a vacancy[6] on the municipal court. Pursuant to R.C. 1901.10, the Chief Justice may also designate a judge of another municipal court to serve "[w]hen the volume of cases pending in any municipal court necessitates an additional judge * * *."

In conclusion, this court holds that the Chief Justice of the Ohio Supreme Court has the authority to appoint or assign a judge to a municipal court when all of its judges have voluntarily disqualified themselves; further, that R.C. 2937.20 does not apply to circumstances such as we are confronted with in the case at bar; and that the presiding judge of the court of common pleas had no authority to assign a judge to the Bedford Municipal Court or to transfer the case to the Garfield Heights Municipal Court. In any event, the transfer of this case to the Garfield Heights Municipal Court was error, and that court lacked the territorial subject matter jurisdiction to proceed in this matter. Without jurisdiction, the Garfield Heights Municipal Court could not have issued the orders which led to appellant Agopian's contempt conviction. Consequently, the judgment of the Garfield Heights Municipal Court is reversed, and final judgment is entered in favor of appellant.

II

In his second assigned error, appellant argues that the trial judge erred in failing to remove himself after an affidavit of prejudice was filed. The trial court overruled the affidavit of prejudice as untimely.

R.C. 2937.20 governs the procedure for the filing of an affidavit of prejudice, and that section provides that "[s]uch affidavit must be filed not less than twenty-four hours before the time set for the hearing of said cause, unless such filing is unavoidably prevented.* * *" Since the affidavit was filed during the hearing, it was untimely. If the affidavit was not timely filed and it did not set forth any facts to show that it could not have been filed on time, then the judge against whom the affidavit was filed may overrule the affidavit or motion and proceed with the trial or hearing. *Household Consumer Discount Co.* v. *Pokorny* (1978), 60 Ohio App. 2d 253, 14 O.O. 3d 232, 396 N.E. 2d 803. Appellant's affidavit contained no such facts. Consequently, the trial court did not err, and the second assigned error is overruled.

Accordingly, the judgment of the trial court is reversed and final judgment is entered in favor of appellant.

*Judgment reversed.*

MARKUS, J., concurs separately.

PARRINO, J., concurs in judgment only.

---

[6] "* * * A vacancy in the office of judge exists upon the death, resignation, forfeiture, removal from office, or absence from official duties for a period of six consecutive months * * *." R.C. 1901.10.

MARKUS, J., concurring. I would reach the same result by sustaining the first assigned error, rather than ruling that the trial court lacked jurisdiction over the underlying case. In my view, the trial court did have jurisdiction, but the record does not support a contempt conviction.

The attorney's allegedly contumacious conduct apparently consisted of one or more of the following acts:

(a) his failure to appear at a scheduled hearing before another judge,

(b) his participation in a one-half hour confidential discussion with his client about her prospective guilty plea, which led to her oral guilty plea,

(c) his subsequent participation in a confidential discussion with his client when the court then requested that her plea be written, which led to her withdrawal of her oral guilty plea.

The record provides no support for a finding that the latter two acts constituted contempt. Manifestly, the lawyer had a duty to discuss a prospective guilty plea with his client for a reasonable time. Nothing in this record demonstrates that those discussions extended for an unreasonable time, or that the attorney consciously delayed proceedings by continuing those discussions.

Thus, only the first contempt charge could justify an adverse finding. An attorney's failure to appear at a scheduled hearing constitutes indirect contempt, if the attorney had notice and lacked justification for his or her absence. *State v. Rose* (Oct. 19, 1978), Cuyahoga App. No. 37767, unreported; cf. *Weiland v. Indus. Comm.* (1956), 166 Ohio St. 62, 1 O.O.2d 198, 139 N.E.2d 36 (contempt for attorney's tardiness); *State v. Lewis* (Mar. 25, 1982), Cuyahoga App. No. 43896, unreported (same). The court conducted the entirety of its hearing on this contempt charge informally, in its chambers, and off the record. After finding the attorney guilty of contempt, the court sentenced him to a fine and five days' imprisonment, with the jail term suspended.

It appears that no sworn testimony was received, and the court denied the attorney's request for a continuance to obtain a court reporter. Criminal contempt must be shown by proof beyond a reasonable doubt. *Brown v. Executive 200, Inc.* (1980), 64 Ohio St. 2d 250, 18 O.O.3d 446, 416 N.E.2d 610; *Bd. of Edn. v. Hamilton Classroom Teachers Assn.* (1982), 5 Ohio App. 3d 51, 5 OBR 146, 449 N.E.2d 26. Like any other criminal conviction, a conviction for indirect contempt cannot result from an informal discussion without sworn testimony. Cf. *Cleveland Heights v. Tsuji* (Apr. 12, 1984), Cuyahoga App. No. 47337, unreported (criminal conviction for illegal parking improper without sworn testimony).

Additionally, the court apparently accepted as accurate the attorney's informal explanation of his conduct. By his explanation, the attorney was engaged in a common pleas court trial when he failed to appear at the scheduled municipal court hearing. The municipal court might well abuse its discretion by denying a proper motion for a continuance in those circumstances. *Meinhard Commercial Corp. v. Spoke & Wheel, Inc.* (1977), 52 Ohio App. 2d 198, 6 O.O.3d 180, 368 N.E.2d 1275. However, the counsel facing such a conflict must seek the continuance seasonably when he learns it has developed. Cf. *Alex N. Sill Co. v. Fazio* (1981), 2 Ohio App. 3d 65, 2 OBR 72, 440 N.E.2d 807.

In this case, the attorney reportedly expected that the common pleas court trial would conclude before the scheduled time for the municipal court hearing. When the common pleas court trial extended to create a conflict, the attorney directed his secretary to telephone the municipal court to request a continuance. The court did not deny that it received the secretary's call.

Rather, the court found the attorney in contempt for (a) failing to make the call himself, (b) failing to seek a continuance in the common pleas proceeding, or (c) failing to cause his associate to appear in his place.

Any of those acts might well have been salutary, but the attorney's conduct did not demonstrate disrespect or a contumacious disruption of judicial proceedings. Since the anticipated hearing was for a guilty plea, no one other than the judge suffered any inconvenience by the requested continuance. There was no showing that the attorney consciously or deliberately caused that inconvenience. The court would have suffered the same inconvenience if the attorney had made the telephone call himself. There was no demonstration that the common pleas court would have afforded a continuance, or that the attorney's associate was available to replace him. Hence, there was no basis for a finding of indirect criminal contempt.

In my view, the Garfield Heights Municipal Court had jurisdiction over the underlying criminal case. Consequently, it had jurisdiction to punish the attorney, if he contumaciously disrupted proceedings in that case. Voluntary recusal by both judges in the Bedford Municipal Court had the same legal effect as unopposed affidavits of prejudice regarding their service. Cf. *Cleveland* v. *Willis* (M.C. 1980), 63 Ohio Misc. 40, 43, 17 O.O.3d 385, 387-388, 410 N.E.2d 823, 826; *State, ex rel. Sowell,* v. *Lovinger* (May 3, 1984), Cuyahoga App. No. 45529, unreported, at 8. Consequently, the Chief Justice of the Cuyahoga County Common Pleas Court then had authority to "designate another magistrate of the * * * county" who should "proceed to try such cause. * * *" R.C. 2937.20; *State, ex rel. Sowell,* v. *Lovinger, supra.*

Indeed, even if the Garfield Heights Municipal Court lacked jurisdiction over the underlying criminal case, the attorney involved here never challenged that jurisdiction. That attorney was subject to punishment for contempt by a court with colorable jurisdiction which he acknowledged and accepted. Cf. *Eastern Associated Coal Corp.* v. *Doe* (W.Va. 1975), 220 S.E.2d 672, 679. A contrary rule would permit a lawyer to disrupt judicial proceedings contumaciously, if he later finds some reason to challenge the court's jurisdiction.

APPENDIX

GARFIELD HEIGHTS MUNICIPAL COURT
Cuyahoga County, Ohio

City of Bedford,                    )
                                    )
              Plaintiff             )      Case nos. 84-1569 thru ·
                                    )               84-1573
vs.                                 )
                                    )
Vickie Lacey,                       )      FINDING AND OPINION
                                    )
              Defendant             )

These matters came on for hearing this 26th day of June,
1984 pursuant to order and notice served upon the defendant,
Vickie Lacey, and her attorney, Richard Agopian.

Whereupon attorney Richard Agopian requested of the Court's
Bailiff that he be heard in chambers. This writer advised
attorney Agopian that the contempt hearing should be heard
after the plea of the defendant was accepted. A partial hear-
ing of attorney Agopian's contempt cause was then had in
chambers at attorney Agopian's request.

Attorney Agopian related that although he requested the
cases be specially set on June 21, 1984 at 8:45 A.M. before
Judge Andrew P. Slivka for plea and sentencing by defendant,·
Vickie Lacey, he was unable to be present due to being engaged
in civil trial in Judge McMonagle's room. (This being the
reason for a prior continuance by attorney Agopian from June
19, 1984 to June 21, 1984). That his secretary called this
Court for a continuance on June 21, 1984. This writer advised
attorney Agopian this was unusual, as customarily the attorney
calls directly from the court room wherein he is engaged and
has the Judge confirms these facts and sets a mutually agree-
able alternate schedule for both judges. Further, this writer
advised attorney Agopian that if attorney Agopian had to re-
turn on June 22, 1984 for charges to the jury that he could
have asked Judge McMonagle for an hour  delay inorder to con-
clude these long delayed criminal matters. Attorney Agopian
admitted he never sought such a short delay from Judge
McMonagle, nor advised Judge McMonagle of this specially set
hearing. Nor could attorney Agopian substantiate why he did
not call the Court directly. It was suggested by this writer
that attorney Agopian's associate, attorney Jurczenko, could
have appeared at the within criminal matter on June 21, 1984.

This writer thereupon advised attorney Agopian that he
certainly had delayed the administration of justice in the
within cause, but would hear out his client, Vickie Lacey, on
her contempt complaint after her plea was formally accepted
in open court in her criminal matters.

Attorney Agopian then requested a continuance to obtain
a court reporter. The Court advised attorney Agopian that this

matter was set at 2:00 P.M. and that he had already been par-
tially heard in chambers at this time. Further, another delay
would add insult to injury as the criminal cases originated in
September of 1983.

Attorney Agopian thereupon requested this writer to advise
him as to whether jail would be imposed upon defendant. Attor-
ney Agopian was advised that the Court had just received the
file from Judge Andrew P. Slivka one-half·hour prior to this
hearing. Further, any sentence herein would be made in open
court according to law. This would necessitate an acceptance
of the plea today and establishing a sentencing date so that
both sides could submit pre-sentencing reports.

The hearing then adjourned to open court to accept defen-
dant's plea and to complete the contempt hearings.

After a one-half··hour discussion between attorney Agopian
and his client, Vickie Lacey, the parties were ordered into
Court by the Bailiff. Whereupon the Court formally advised
the defendant, Vickie Lacey, of her rights according to law
and accepted her oral plea of guilty. As is procedural in the
Garfield Heights Municipal Court, a written plea was requested
of the defendant. Attorney Agopian and defendant, Vickie
Lacey, returned to the trial table to execute said statement.
At the trial table the court advised the defendant to read
the statement as a discussion was being held between attorney
Agopian and the defendant. However, attorney Agopian continued
to talk to defendant. Whereupon, the defendant and her attor-
ney were called to return to the bench to answer any questions
defendant might have. Upon returning, attorney Agopian ad-
vised the Court that the defendant chose to maintain her plea
of not guilty. Accordingly, the Court withdrew said guilty
plea and advised the parties it would set a trial date.
Further, the Court advised that is would now continue hearing
the contempt complaints.

Defendant, Vickie Lacey, then advised the Court that she
was present on June 21, 1984 as ordered. That she called
attorney Agopian from Court that morning and his secretary
advised her attorney Agopian would be there about 10:00 A.M.
Defendant waited until approximately 11:00 A.M. and then left
after a discussion with the Court's Referee, Jack E. Monnin.

Attorney Agopian then sought to file instanter a hand-
written "Affidavit of Prejudice", which he prepared as defen-
dant Lacey spoke. Attorney Agopian was advised that said .
"Affidavit of Prejudice" was not timely filed and overruled.
Further, that his actions on this date, together with prior
delays, would lead one to conclude said actions were inten-
tional to delay the administration of justice herein.

Accordingly, attorney Agopian was found in contempt.and
ordered to pay a fine of $250.00 and five (5) days confinement.
Said five (5) days suspended. Defendant Lacey was found not

guilty and advised her other criminal cases would be set for trial as soon as she was medically able, said defendant Lacey being in the final stages of pregnancy.

Attorney Agopian requests a Stay of Execution and requested a bond be set. Without passing upon the merits of said appeal bond, the Court set a $500.00 cash bond.

KENNETH R. CSTRALKA     Judge