OPINION
Respondent-appellant Kristopher Bauman appeals from a Civil Protection Order entered against him pursuant to R.C. 3113.31. Bauman contends that the evidence does not support a finding that a Civil Protection Order was warranted. He also contends that the trial court erred by twice finding him in contempt, and sanctioning him.
We conclude that the trial court did not err by entering the Civil Protection Order. The evidence revealed a threat that caused petitioner-appellee, Tina Strong, to believe that she was in imminent danger of physical harm. We further find that the record fails to portray error in Bauman's contempt citation. Accordingly, the judgment of the trial court is Affirmed.
 I
Tina Strong and Kristopher Bauman were involved in a fourteen-year relationship during which they had one daughter. Eventually, the relationship terminated and the parties' interaction became strained.
On December 31, 1996 and January 1, 1997, Bauman placed approximately sixty telephone calls to Strong's residence. The calls were recorded on Strong's answering machine. The majority of the calls were, as Bauman concedes, rude and vulgar. He referred to Strong as "Tuna" in many of the messages. The text of the messages, as relevant to this appeal, will be set forth in the discussion below. Strong contacted the police seeking to file charges against Bauman for the calls, but was informed by the police that "there wasn't nothing they could do about it."
On July 24, 1997, Strong found the following letter, addressed to "CunTuna," in her mailbox:
 With each day that passes since I last saw my daughter, the urge to kill something grows more and more overwhelming. I can't take much more.
 I need to find an outlet for this frustration. You see, I REALLY DID LOVE HER with all my heart.
Did your shot hurt? GOOD!
 Why are you still alive? Is it just to make everyone around you miserable?
 Have you ever dreamed that one afternoon, you're all alone and just waking up from your daily dope nap, and you look up and see the barrell [sic] of * * * shot gun?
I have that very dream all the time.
 Has your disposable f___ boy caught on to what a low life you are yet?[1]
After receiving the letter, Strong contacted the police. A criminal prosecution was instituted, and Bauman was convicted of Disorderly Conduct.
On November 7, 1997, Strong filed a petition for a domestic violence civil protection order, pursuant to R.C. 3113.31. According to the record, Strong filed the petition upon the expiration of the criminal case. An ex parte civil protection order was entered on the same day. A full hearing was conducted by the magistrate on November 25, 1997. The magistrate did not hear evidence regarding the telephone calls. However, on January 7, 1998, the magistrate entered a civil protection order against Bauman based upon the contents of the letter. The order required, among other things, that Bauman stay away from Strong, attend "The Batterer's Group" program, and pay court costs.
Bauman filed objections to the magistrate's decision. Bauman also filed a motion to eliminate the requirement that he attend The Batterer's Group. The magistrate overruled the motion. Thereafter, on March 30, 1998, Bauman filed a motion to stay the counseling requirement. On May 1, 1998, Bauman also filed a motion to stay the order for payment of court costs.
The trial court held an additional hearing on June 2, 1998, in order to take evidence regarding the telephone calls made by Bauman to Strong. The trial court entered an order on June 15, 1998, in which the magistrate's decision was approved. The trial court also required Bauman to attend The Batterer's Group, to pay court costs, and to pay interim attorney fees to Strong. The court also set the matter for review on August 7, 1998. Bauman filed a notice of appeal from that judgment.
It appears from the record that a contempt hearing was held on August 7, 1998, although no transcript of this hearing is in the record. At oral argument, Bauman's counsel acknowledged that although he could not remember this hearing, his client did. Thereafter, on August 10, 1998, Bauman filed a motion seeking a stay of the "penalty portions" of the trial court's June 15 judgment.[2] The trial court entered an order on August 24, 1998, in which it recited that, after a full hearing, it found Bauman in criminal contempt of court for his failure to attend The Batterer's Group and to pay interim attorney fees. Bauman was sentenced to sixty days in jail for non-compliance. The order also denied Bauman's motion for a stay. Bauman filed a second notice of appeal in regard to the finding of contempt.
On September 9, 1998, Bauman filed an emergency motion with this court seeking a stay of the trial court's orders dated June 15 and August 24, 1998. Subsequently, on September 17, 1998, Bauman filed a motion for a stay of execution of sentence with the trial court; the motion was granted that same day. This court granted a stay of execution of sentence on September 18, but denied the motion in all other regards. This court also consolidated Bauman's two appeals.
 II
Bauman's First Assignment of Error states as follows:
 THE LOWER COURT ERRED AS A MATTER OF LAW IN HOLDING THAT THE FACTS AND CASELAW [SIC] SUPPORT AN ORDER GRANTING A CIVIL PROTECTION ORDER AGAINST APPELLANT.
Bauman contends that the trial court erred by granting a civil protection order against him. He argues that his actions, in sending the letter and making the telephone calls, do not meet the statutory definition of domestic violence as set forth in R.C.3113.31. Specifically, he argues that the letter and calls are not threats, and that they do not meet the "imminent" requirement of R.C. 3113.31(A)(1)(b). He further argues that the evidence does not support the judgment because Strong testified that she had reason to retaliate against him. Finally, he argues that the trial court's reliance upon Felton v. Felton (1997), 79 Ohio St.3d 34, is misplaced.
"The statutory criterion to determine whether or not to grant a civil protection order pursuant to R.C. 3113.31 is the existence or threatened existence of domestic violence." Thomas v. Thomas
(1988), 44 Ohio App.3d 6, 8. "When granting a protection order, the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence. R.C. 3113.31(D)." Felton v. Felton (1997), 79 Ohio St.3d 34, paragraph two of the syllabus.
R.C. 3313.31(A)(1) defines domestic violence in part as:
 * * * the occurrence of one or more of the following acts against a family or household member:
* * *
 (b) Placing another person by the threat of force in fear of imminent serious physical harm * * *.
The decision as to whether to grant a civil protection order lies within the sound discretion of the trial court. Deacon v.Landers (1990), 68 Ohio App.3d 26, 31. Therefore, the trial court's decision will not be disturbed absent an abuse of that discretion. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
We first address the issue of whether the letter constitutes a threat. Bauman contends that since the letter speaks in terms of dreams, which are by their nature "very subjective and not easily quantifiable," it cannot be interpreted as a threat. We disagree. The letter specifically states that Bauman has the urge to kill "something," and then goes on to state that he dreams of putting a shotgun in Strong's face. The letter also asks Strong why she is still living. The entire tone of the letter is threatening, and can be construed as a definite threat to Strong's well-being. The fact that the threat is couched as a dream does not make the threat less real. The trial court found, and the evidence in the record would support the finding, that Bauman chose to communicate the threatening contents of his dreams to Strong. Furthermore, the use of the term "dream" is capable of being interpreted as something that Bauman wished for. See,Webster's Third New International Dictionary (1969), 688, which includes, as one definition of the word "dream," "a major aim, goal, or purpose the attainment of which is ardently desired or longed for." Therefore, we cannot say that the trial court erred by finding that the letter constituted a threat of domestic violence.
We next turn to Bauman's claim that the telephone messages do not contain any threat of physical harm, and at best convey a wish to engage others in physical confrontations. From our review of the messages, we conclude that the following excerpts are relevant to this appeal:
 10:20 p.m., Tuesday. Message 14. Oh, yeah, you want to f___ with me bitch. You want to. Do it. I'm just dying to get a piece of you and so is everybody here. Everybody. Whole entire family, the whole entire clan, aunts, uncles, in-laws, everybody. Come on over. Pay us a visit. Stop in sometime while I'm at work. I dare ya.
 12:30 a.m., Wednesday. Message 7. I got my ass kickin' boots on, ready, waiting for some crippled c__t to show up at my door with ___.
 12:33 a.m., Wednesday. Message 9. Let me talk to that crippled whore. Let me see her just one time. That's all it will take. I swear to God, that's all it will take. * * *
 1:02 a.m., Wednesday. Message 13. All you low life dope scum deserve a good old fashion ass whipping. I invite you all over here for that tonight. * * *
These messages constitute conditional threats; i.e., if Strong went to Bauman's residence, he would give her an "ass whipping." See, Columbus v. James (Sept. 15, 1988), Franklin App. Nos. 87AP-1218 and 87AP-1222, unreported ("You come in here and I'll kick your ass.").
Bauman contends that these communications do not contain threats of imminent harm. "Imminent" is not defined in R.C.3113.31, and therefore, we must construe it according to its ordinary meaning. State v. S.R. (1992), 63 Ohio St.3d 590, 595. "Imminent" means "ready to take place," "near at hand," "impending," "hanging threateningly over one's head," or "menacingly near." Webster's Third New International Dictionary
(1969), 1130.
Based upon the ordinary definition of "imminent," we do not construe the imminence requirement as requiring that the offender carry out the threat immediately or be in the process of carrying it out. If that were the case, a man could threaten to kill his wife at some time in the near future; so long as the threat was couched in terms of a time span of more than a few minutes, the man would not be subject to a Civil Protection Order. However, it is clear that Civil Protection Orders are intended to prevent domestic violence before it occurs. Therefore, we conclude that the critical inquiry under the statute is whether a reasonable person would be placed in fear of imminent (in the sense of unconditional, non-contingent), serious physical harm. This inquiry necessarily involves both subjective and objective elements. See, Siouffi v. Siouffi (Dec. 18, 1998), Montgomery App. No. 17113, unreported. Therefore, we must determine whether Strong had a reasonable belief that Bauman would cause her imminent, serious physical harm.
Bauman is correct in his assertion that Strong failed to testify directly that she feared or believed that he would cause her imminent harm. However, upon receipt of the letter, Strong immediately called the police, instituted criminal charges, and subsequently sought a Civil Protection Order. While a close call in this case, we conclude that the trial court could reasonably, and presumably did, infer, based both upon her actions and upon the frightening nature of Bauman's communications, that Strong was in fear, or of the belief, that Bauman would cause her imminent harm. The threats communicated in the letter are of a nature that they are calculated to cause a person of reasonable sensibility to fear that Bauman would harm her.
In regard to the phone messages, we note that although Strong did call the police, there is no indication from the record that she believed that she was in danger of harm. To the contrary, her testimony at the hearing suggests that she merely found the messages "rude, crude and socially unacceptable." She did not seek a Civil Protection Order after the calls were made. Furthermore, given that the threats were of a conditional nature (i.e., if you come here, I will beat you), we cannot infer that a reasonable person would believe that she was in danger of imminent harm. Given the absence of any evidence that Strong believed, based upon the calls, that she was in danger of serious physical harm, we conclude that the trial court erred by finding that the calls constituted a threat of domestic violence. Of course, the conditional threats of violence in the telephone calls, while insufficient in themselves to justify a civil protection order, do color the unconditional threats in the letter by making them more credible and frightening.
Bauman next contends that Strong testified that she had reason to want to retaliate against him because he had "called Children's Services on [her]." He therefore argues that Strong's testimony was not credible. The weight to be given to evidence and the credibility of the witnesses are primarily left to the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
In this case, Strong also testified that she would not file a domestic violence action in order to "get even" with Bauman. The trial court was in the best position to determine Strong's credibility, and we cannot, on the record before us, say that it erred by relying on her testimony.
Finally, Bauman contends that the trial court erred by relying "totally on the holding of the Ohio Supreme Court inFelton v. Felton (1997), 79 Ohio St.3d 34." He argues thatFelton is distinguishable from this case because it involved actual physical violence. The trial court relied upon Felton for the proposition that it is not necessary to show that domestic violence has occurred, but that the petitioner is in danger of domestic violence. In our view, Felton supports this proposition. See, Felton, second paragraph of syllabus, and p. 42.
Bauman's First Assignment of Error is overruled.
 III
In his Second Assignment of Error, Bauman argues:
 THE LOWER COURT ERRED IN DENYING APPELLANT'S STAY AND SUBSEQUENTLY HOLDING APPELLANT IN CONTEMPT.
Bauman contends that the trial court erred by holding him in contempt and by denying his motion for a stay.[3]
Initially we find a review of the proceedings helpful. We note that the trial court order of June 15, 1998 affirmed the magistrate's order and additionally ordered Bauman to pay interim attorney fees to Strong. The order also denied Bauman's previous motions for a stay. The trial court then set the matter for a compliance review on August 7, 1998. From the record, it appears that a full hearing was held on August 7, 1998; however, Bauman has failed to request, or file, the transcript from that hearing. Three days after the hearing, Bauman filed new motions to stay the court's orders regarding the Batterer's Group and payment of attorney fees. Thereafter, the trial court issued its order finding Bauman in criminal contempt of court and denying his new motions for stay.
Contempt power is inherent in the courts. Zakany v. Zakany
(1984), 9 Ohio St.3d 192. A trial court has the ability to punish by contempt proceedings any person who does not obey the court's orders. R.C. 2705.02. Bauman does not deny that he failed to comply with the trial court's orders. Instead, he argues that he was not required to follow the orders since he had filed a notice of appeal and a motion for stay.
An order issued by a court with jurisdiction must be obeyed until reversed by proper procedure. Bd. Of Educ. Of Hamilton CitySchool Dist. v. Hamilton Classroom Teachers Assoc. (1982), 5 Ohio App.3d 51,53, citing United States v. United Mine Workers ofAmerica (1947), 330 U.S. 258, 293. The mere filing of a notice of appeal does not stay the orders of a trial court. Instead, the appellant may obtain a stay by filing a motion therefor with the trial court or with the appellate court. Civ.R. 62(B) and (D). As noted, the original motions for stay were overruled by the trial court's June 15, 1998 order. The new motions for stay were not filed until three days after the contempt hearing. The motions for stay filed with this court were not filed until after the contempt hearing. Therefore, at the time that the contempt proceedings were held, the orders of the trial court were in full effect, and Bauman had failed to obey them.
Finally, we note that without the aid of a transcript of the contempt hearing, we cannot adequately review this issue for error. A trial court speaks only through its journal. State exrel. Fogle v. Steiner (1995), 74 Ohio St.3d 158, 163. In the absence of evidence to the contrary, we must indulge the presumption of regularity accorded to all judicial proceedings.Gaskins v. Shiplevy (1996), 76 Ohio St.3d 380, 382.
Bauman's Second Assignment of Error is overruled.
 IV
Both of Bauman's Assignments of Error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and YOUNG, JJ., concur.
[1] Although the subject letter was admitted into evidence by the magistrate, and reviewed by the trial court upon Bauman's objections, the letter is not contained within the record. Upon notification thereof, the parties have stipulated that the first page of the letter, as set forth in this opinion, is a true and accurate copy of the exhibit admitted, and considered, by the trial court.
[2] A reading of the motion indicates, and the trial court found, that Bauman referred to the portion of the judgment that required him to attend The Batterer's Group as a penalty.
[3] Bauman advances no argument in support of his claim that the trial court erroneously denied his motions for stay. Further, he does not claim to have been prejudiced by the trial court's refusal to do so. Thus, we need not address this issue.