This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Donald E. Schlessner, appeals the entry of criminal contempt against him in the Summit County Court of Common Pleas, Domestic Relations Division. We reverse.
 I.
On October 2, 1998, Vicki Lynn Schlessner filed a complaint in the Summit County Common Pleas Court, Domestic Relations Division, seeking a divorce from Mr. Schlessner. During the pendency of the divorce proceedings, spousal support in the amount of one thousand dollars per month was found to be appropriate by the magistrate below and defendant's objections to the magistrate's order were overruled by the trial court on February 11, 1999. On February 24, 1999, Ms. Schlessner filed a motion to hold Mr. Schlessner in contempt of court for failing to pay the spousal support as ordered. Ms. Schlessner filed an "EMERGENCY MOTION REQUESTING DEFENDANT TO VACATE MARITAL RESIDENCE" on April 1, 1999, averring that Mr. Schlessner was not paying the mortgage, credit card bills, or spousal support and that the marital residence — which Ms. Schlessner had vacated — had sustained fire damage while under Mr. Schlessner's care.
The magistrate ruled on the outstanding motions regarding contempt and the marital residence on April 21, 1999, following a hearing conducted the previous day. The magistrate found Mr. Schlessner to have paid only $241.86 of the $4,123.16 due in spousal support and ordered Mr. Schlessner to serve three days of incarceration or accomplish forty hours of community service. Mr. Schlessner was given the opportunity to purge the contempt by paying five hundred dollars. Ms. Schlessner's motion to force Mr. Schlessner to vacate the marital residence, where he was residing with the parties' daughter, was denied.
Ms. Schlessner moved, on April 30, 1999, to increase Mr. Schlessner's spousal support obligation, alleging that Mr. Schlessner had fraudulently misrepresented his income to the trial court. On May 24, 1999, Ms. Schlessner filed a motion for leave to file a supplemental complaint, which was granted on May 28, 1999. Ms. Schlessner filed motions for discovery sanctions, contempt for failure to comply with the trial court's spousal support orders, and for attorney fees. The trial court granted the parties a divorce on February 9, 2000 and again found Mr. Schlessner in contempt, sentencing him to seven days in jail but also affording him the opportunity to purge the contempt order by completing the community service and paying the spousal support arrearages, court costs, and cooperating with the sale of the marital residence.
Ms. Schlessner again filed a motion for contempt for failure to pay spousal support on April 17, 2000. The trial court found that Mr. Schlessner had failed to comply with the conditions set forth to purge the contempt finding and sentenced Mr. Schlessner to seven days in jail, further the trial court again found Mr. Schlessner in contempt for failure to comply with the court's earlier orders. Mr. Schlessner was again given the opportunity to purge the contempt. Ms. Schlessner filed a motion for contempt for failure to pay the mortgage, failure to pay spousal support, dissipation of marital assets, and failure to obtain employment on June 23, 2000. A hearing on this matter was apparently held on August 15, 2000.[1] The trial court entered judgment on September 14, 2000, finding Mr. Schlessner in contempt based on his dissipation of marital assets but reserving judgment as to the issues of failure to pay spousal support and failure to pay the mortgage. The trial court sentenced Mr. Schlessner to ninety days in the Summit County Jail. The contempt order was to be purged if he completed sixty days in the Oriana House work release program, paid Ms. Schlessner six hundred and fifty dollars— her share of the asset which he sold thereby dissipating marital assets — five hundred dollars for Ms. Schlessner's attorney fees, and court costs of the contempt motion. This appeal followed.
 II.
Mr. Schlessner asserts five assignments of error. We will address each in turn, consolidating his second, third, and fourth assignments of error to facilitate review.
 A. First Assignment of Error THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FINDING APPELLANT GUILTY OF CRIMINAL CONTEMPT AFTER CONDUCTING AN INFORMAL CONTEMPT HEARING WITH UNSWORN TESTIMONY IN VIOLATION OF APPELLANT'S CONSTITUTIONAL DUE PROCESS RIGHTS.
Mr. Schlessner avers that the trial court erred in finding him guilty of indirect criminal contempt without conducting a formal hearing, during which sworn testimony was taken.[2] We agree.
If the act upon which the contempt proceeding is predicated was committed outside the presence of the court, the contempt proceeding is for indirect contempt. Adams v. Epperly (1985), 27 Ohio App.3d 51, 52. Contempt may be classified as either civil or criminal; if it is civil, then one is entitled to only those due process protections afforded parties in civil actions, whereas, if it is criminal, one is entitled to the due process protections normally afforded defendants in criminal actions. Id. When a court is asked to determine whether contempt is civil or criminal, the distinguishing factor is not the punishment imposed
 "but rather, the character and purpose of the punishment. * * * Punishment is remedial or coercive and for the benefit of the complainant in civil contempt. Prison sentences are conditional. The contemnor is said to carry the keys of his prison in his own pocket, * * * since he will be freed if he agrees to do as ordered. Criminal contempt, on the other hand, is usually characterized by an unconditional prison sentence. Such imprisonment operates not as a remedy coercive in its nature but as punishment for the completed act of disobedience, and to vindicate the authority of the law and the court. * * * Therefore, to determine if the sanctions in [a cause] were criminal or civil in nature, it is necessary to determine the purpose behind each sanction: was it to coerce the appellees to obey the [court order], or was it to punish them for past violations?"
(Omissions original.) Id., quoting Brown v. Executive 200, Inc. (1980),64 Ohio St.2d 250, 253-54.
The trial court found Mr. Schlessner guilty of contempt for dissipation of marital assets.[3] The trial court found Mr. Schlessner to have violated its February 9, 2000 judgment entry by failing to place the amount realized from the sale of a vehicle trailer into the "attorney's escrow savings account" and for selling the trailer for substantially less than its appraised value.[4] In short, he sold a trailer, which had previously been determined to be joint property and was to be sold with the proceeds distributed equally to both parties. Mr. Schlessner used the proceeds to pay for the feed for one of the parties' horses, which was also to be sold.
In its order finding Mr. Schlessner to be in contempt, the trial court noted that this was the fourth instance in which he had been found in contempt of court and noted that "[i]ronically, he did this after spending seven days in jail on a prior contempt charge." Although the order allows Mr. Schlessner to purge his contempt, it confronts him with a Hobson's choice. If he chooses not to purge, he will spend ninety days in the Summit County Jail, while if he does purge he will spend sixty days in the Oriana House work release program. To purge his contempt, he also must pay attorney fees, court costs, and half the sale price of the trailer to Ms. Schlessner.
The exact nature of the trial court's decision is unclear, as even if Mr. Schlessner purges the contempt he will be incarcerated in Oriana House's work release program. Mr. Schlessner will be incarcerated whether or not he purges the contempt, albeit for a shorter time if the contempt is purged, which evidences the trial court's intent to punish him for violating its prior orders. Further, in its entry finding Mr. Schlessner guilty of contempt, the trial court recited his past violations, which also evidences a punitive motive. "A sanction for civil contempt must allow the contemnor to purge himself of the contempt. Once the contemnor chooses to comply with the court's order, the purpose of the sanction is achieved and the sanction is discontinued." (Citation omitted.) Cleveland v. Ramsey (1988),56 Ohio App.3d 108, 110. Further, if the "primary purpose of the trial court was punitive rather than coercive, * * * [it is] a case of criminal contempt[.]" In re Appropriation for 1979 (1980), 62 Ohio St.2d 99, 101. Accordingly, while there is some coercive effect here, namely coercing Mr. Schlessner to pay certain sums of money, we conclude the intent is punitive. Therefore, we conclude that the contempt order is criminal in nature, and hence, "many of the significant constitutional safeguards required in criminal trials" inure to the proceedings below. State v.Kilbane (1980), 61 Ohio St.2d 201, 205.
To be found guilty of criminal contempt, one must be found guilty beyond a reasonable doubt. Brown, 64 Ohio St.2d at 252. Further, one is presumed innocent. Id., quoting Gompers v. Bucks Stove Range Co. (1911), 221 U.S. 418, 444, 55 L.Ed. 797, 807. One also has the constitutionally guaranteed right to be present at the contempt hearing and present witnesses. Adams, 27 Ohio App.3d at 53. A finding of criminal contempt must be based on sworn testimony. Bedford v. Lacey
(1985), 30 Ohio App.3d 1, 7 (Markus, J., concurring) ("like any other criminal conviction, a conviction for indirect contempt cannot result from an informal discussion without sworn testimony"); State v. Felson
(Mar. 23, 2001), Hamilton App. No. C-000470, unreported, 2001 Ohio App. LEXIS 1378, at *11 (stating that one is entitled to "the usual due-process guarantees providing an accused the rights to be advised of the charges, to have a reasonable opportunity to meet the charges at a meaningful hearing, to testify, to call other witnesses, and to be represented by counsel"); Ashtabula Cty. Med. Ctr. v. Douglass (June 3, 1988), Ashtabula App. No. 1331, unreported, 1988 Ohio App. LEXIS 2108, at *11 ("The transcript shows that without being sworn, the judge presented his own case in terms of a recitation of the events preceding the citation for contempt * * *[.] The appellant declined to testify, his counsel arguing that the state must prove its case beyond a reasonable doubt and that the presentation of the judge fell short of that requirement. The appellant's argument has merit. There was no sworn testimony which established any element of the alleged contempt, much less culpability.").
Only one witness at the hearing below was sworn or subject to cross-examination. The contempt hearing was conducted in an informal manner. The single sworn witness testified as to the parties' attempts to sell the marital residence, not as to the sale of the trailer for which Mr. Schlessner was found to be in contempt. Further, it is unclear whether the parties realized the hearing below to be the contempt hearing on the issue of dissipation of marital assets. Moreover, while only testimony regarding the sale of the marital residence was presented, the trial court reserved judgment on all the issues of contempt except the dissipation of martial assets by the sale of the trailer.
Confusion as to the purpose of the proceeding below was apparent from counsel's statements during the hearing. Further, it was unclear whether the trial court was contemplating civil or criminal contempt. In her motion for contempt, Ms. Schlessner requested that Mr. Schlessner be sentenced to the "maximum term of incarceration." However, Ms. Schlessner's prior motions also requested that Mr. Schlessner be sentenced to incarceration, while the trial court's entries of contempt were generally conditional, allowing Mr. Schlessner to purge without serving a jail term. At the hearing, Ms. Schlessner's counsel offered "[a]gain, if the court would take testimony, I do have the exhibits that verify when the last payment was made on the home and foreclosure proceedings. If the court needs that evidence via testimony, I'm prepared to do that." Further, Mr. Schlessner's attorney stated that September 15 is
 the date this court set for Mr. Schlessner to come back and address those issues on employment and to have employment done by then, and, quite frankly, you know, I'm not happy that motion is raised in the interim now with this court.
 You have already given him a purge date to come in and address all those issues and he is certainly going to have to address those at that time and either be employed or tell you why he isn't.
 The court responded, in part, that "[w]e also know that * * * he sold this trailer and then he used the money rather than sharing it." The parties also discussed, inter alia, the disposition of horses, the whereabouts of deer that the Schlessners owned, and Mr. Schlessner's medical condition.
As this court has previously held,
 "[i]t is the burden of the moving party, not the accused, to affirmatively demonstrate that a defendant in a criminal proceeding had sufficient notice to appreciate the criminal nature of the proceeding against him and that he has knowingly, intelligently, and voluntarily waived his right to be present and participate at trial."
Adams, 27 Ohio App.3d at 53, quoting Ex parte Johnson (Tex. 1983),654 S.W.2d 415, 421-22. Due to the variety of issues discussed and the lack of sworn testimony, it is apparent that the purpose of the hearing was unclear to the parties and that the proper procedure for a criminal contempt hearing was not followed.
As noted above, Mr. Schlessner was found to be in contempt, at least in part, based on his sale of the trailer for under its four thousand dollar appraised value. Mr. Schlessner, in unsworn statements, disputed this appraised value at the hearing, noting that the appraiser failed to consider that the front end of the trailer was smashed, the doors on the trailer were missing, it needed a new header, the undercarriage had deteriorated, the tires were in need of replacement, the brakes needed service, and the trailer needed a new roof. Further, sworn testimony was not adduced on the issue that was apparently being adjudicated. Accordingly, we conclude that the trial court's entry of a finding of criminal contempt, without taking sworn testimony, was improper. Therefore, we conclude that the trial court's finding of contempt must be reversed. Mr. Schlessner's first assignment of error is sustained.
 B. Second Assignment of Error THE TRIAL COURT'S ORDER FINDING APPELLANT IN CONTEMPT WAS CONTRARY TO LAW.
 Third Assignment of Error THE TRIAL COURT'S ORDER FINDING APPELLANT IN CONTEMPT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 Fourth Assignment of Error THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING APPELLANT GUILTY OF CRIMINAL CONTEMPT.
Mr. Schlessner asserts that the trial court erred as a matter of law in finding him guilty of contempt, that the trial court's finding was against the manifest weight of the evidence, and that the trial court abused its discretion in finding him guilty of contempt. As the finding of contempt must be reversed and the cause remanded upon Mr. Schlessner's first assignment of error, we find that our resolution of Mr. Schlessner's first assignment of error renders his second, third, and fourth assignments of error moot.
Mr. Schlessner addresses his second, third, and fourth assignments of error together in his brief to this court. He argues that trial court erred legally and factually in finding Mr. Schlessner to be in contempt based upon the unsworn statements at the hearing below. However, as we find the lack of an appropriate hearing to have violated Mr. Schlessner's right to due process of law, these issues regarding what the trial court could have found had the hearing been proper are moot. Accordingly, we decline to address them. App.R. 12(A)(1)(c).
 C. Fifth Assignment of Error THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY BIFURCATING APPELLEE'S CONTEMPT MOTION; FINDING APPELLANT IN CRIMINAL CONTEMPT OF COURT; AND SENTENCING APPELLANT TO JAIL WHEN THE TRIAL COURT DID NOT DETERMINE OR DISPOSE OF ALL THE ISSUES RAISED IN APPELLEE'S CONTEMPT MOTION.
Mr. Schlessner asserts that holding separate hearings on the various issues of contempt would subject the defendant to multiple punishments for contempt arising from a single contempt motion and, as such, violates his right to due process of law. We find this argument not to be ripe.
Mr. Schlessner asserts two arguments in this regard: first, he asserts that R.C. 2705.05 "requires a trial court to conduct a single hearing;" second, he asserts that allowing multiple hearings would subject a defendant "to multiple imprisonments arising from a single contempt motion," essentially asserting that such a procedure violates double jeopardy principles.
The first step in determining ripeness is the requirement of finality, which "is met when `* * * the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury.'" (Citation omitted.) Karches v. Cincinnati (1988),38 Ohio St.3d 12, 14-15. As the Ohio Supreme Court held in State exrel. Elyria Foundry Co. v. Indus. Comm. (1998), 82 Ohio St.3d 88, 89,
 The ripeness doctrine is motivated in part by the desire "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements[.]" * * * As one writer has observed: "The basic principle of ripeness may be derived from the conclusion that `judicial machinery should be conserved for problems which are real or present and imminent, not squandered on problems which are abstract or hypothetical or remote.' * * * [T]he prerequisite of ripeness is a limitation on jurisdiction that is nevertheless basically optimistic as regards the prospects of a day in court: the time for judicial relief is simply not yet arrived, even though the alleged action of the defendant foretells legal injury to the plaintiff."
(Citations omitted.) See, also, Aydin Corp. v. Union of India (C.A.9, 1991), 940 F.2d 527, 528.
Mr. Schlessner first asserts that the trial court erred in bifurcating one contempt issue from the other contempt issues raised in Ms. Schlessner's motion. In Ms. Schlessner's motion for contempt, she sets forth four allegations: (1) failure to pay the mortgage; (2) failure to pay spousal support; (3) dissipation of marital assets; and (4) failure to obtain employment. The trial court ruled only on the issue of dissipation of assets. Mr. Schlessner has not been found guilty of contempt on the remaining allegations set forth in Ms. Schlessner's motion for contempt. Further, he has not been ordered to serve any jail term in regard to these other issues. Hence, we conclude that the injury alleged in this argument is merely foretold, and hence, this argument is not yet ripe.
Mr. Schlessner also avers that the remaining contempt charges subject him to multiple punishments for the same conduct. Mr. Schlessner has been found in contempt but once. Hence, the double jeopardy clause has not yet come into issue. Mr. Schlessner may, for instance, be found not guilty of the remaining allegations of contempt or they may be dismissed. See Wenzel v. Enright (1993), 68 Ohio St.3d 63, paragraph one of the syllabus (holding that the denial of a motion to dismiss based on double jeopardy principles is not a final, appealable order). Accordingly, we conclude that this issue too is not yet ripe for review, as Mr. Schlessner has not yet been found guilty on these allegations of contempt.
 III.
Mr. Schlessner's first assignment of error is sustained. His second, third and fourth assignments of error are rendered moot by our disposition of his first assignment of error. App.R. 12(A)(1)(c). His fifth assignment of error is not yet ripe for review.
The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellee.
Exceptions.
______________________________________ WILLIAM G. BATCHELDER
CARR, J., WHITMORE, J. CONCUR
[1] The cover page of the transcript indicates that the hearing was held "on the 15th day of August, 1998[.]" However, the text of the transcript indicates that the hearing was held in 2000 and that it was held pursuant to the June 23, 2000 motion for contempt. In any event, this apparent error is of little import as we find we must reverse.
[2] As appellee failed to file an appellate brief, we note that "the court may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action." App.R. 18(C).
[3] It is unclear whether the trial court was proceeding pursuant to R.C. 2705.02, stating that disobedience of a lawful court order is punishable as contempt, R.C. 2705.03, providing the procedure in such cases, R.C. 2705.031, providing for contempt proceedings in the context of the nonpayment of spousal support, and/or R.C. 2705.05, providing for a hearing and penalties. However, as our resolution of this matter turns on due process analysis, we need not delve into these issues.
[4] The trial court, in part, based its finding of contempt on the allegation that Mr. Schlessner failed to place the proceeds of the sale of the trailer in the "attorney's escrow savings account" pursuant to the trial court's February 9, 2000 entry of judgment. The trial court's judgment entry states that "[a]ll assets listed in Fact #11 shall be sold and the proceeds shall be placed in the attorney's escrow savings account." The trailer at issue herein was listed in the section of the trial court's opinion entitled "FACTS" at paragraph 14 subsection E of the trial court's divorce judgment entry. The trailer was not mentioned in paragraph eleven of the facts section in the trial court's divorce judgment entry. We are uncertain as to whether "Fact #11" is contained in another document.