BOARD OF EDUCATION OF THE BRUNSWICK CITY SCHOOL
DISTRICT, APPELLEE AND CROSS-APPELLANT, *v.*
BRUNSWICK EDUCATION ASSOCIATION ET AL., APPELLANTS
AND CROSS-APPELLEES.

[Cite as Bd. of Edn. v. Brunswick Edn. Assn. (1980),
61 Ohio St. 2d 290.]

(No. 79-98—Decided March 12, 1980.)

*Messrs. Squire, Sanders & Dempsey, Mr. George I. Meisel* and *Mr. Edward J. Brzytwa,* for appellee and cross-appellant.

*Green, Schiavoni, Murphy, Haines & Sgambati Co., L.P.A., Mr Eugene Green, Mr. Anthony P. Sgambati II* and *Mr. Barry Laine,* for appellants and cross-appellees.

HOLMES, J.  The primary issue raised in the appeal of this cause is whether a finding of prior disobedience is a necessary antecedent to a court's imposition of coercive sanctions against future non-compliance with its order. The cross-appeal raises the issue of whether the General Assembly may constitutionally limit the sanctions which a court may utilize in a case of civil contempt. We discuss the appeal and cross-appeal separately.

### I.

Appellants urge this court to reverse that portion of the Court of Appeals' decision which upheld their incarceration for contempt. They argue that the trial court never made a finding that their previous conduct was violative of the temporary restraining order, and that absent such a finding the court was incarcerating them for the mere intention to disobey its order in the future. This, they claim, is impermissible.

Appellee responds that, in this cause, the trial court did make a finding of past violation before imposing the sanctions available under its civil contempt powers. However, appellee argues in the alternative that even where no past violation is proved, a court has the right to demand future compliance with its orders, and may imprison those who refuse to comply.

A thorough review of the record on appeal convinces us that the trial court made no finding that any of the individual appellants had previously disobeyed the temporary restraining order. While it is true that the judgment entry recited that evidence was presented on this issue, the trial court never reached a conclusion as to whether individual violations of the order had, in fact, been established.

It is apparent from those portions of the transcript reproduced *supra,* that the focus of the court's inquiry at the contempt hearing was upon whether appellants intended to obey the terms of the order in the future. The court repeatedly disclaimed any intention to find them in contempt for their past conduct, and there is no indication in the record that it did so. Indeed, the only specific finding made by the trial court was that the alleged contemnors "do not intend, now or in the future, to comply with the terms of the temporary restraining order."

The trial court never adjudged appellants in contempt for their past conduct. We must decide, therefore, whether the court's order of incarceration is sustainable on a theory of prospective contempt. The majority of this court believe it is not.

It is true, in one sense, that sanctions for civil contempt look to the future conduct of parties to an action. While sentences for criminal contempt are primarily punitive in nature and are designed to vindicate the authority of the court, the purpose of sanctions for civil contempt is to coerce the contemnor in order to obtain future compliance with a court order. *State* v. *Local Union 5760* (1961), 172 Ohio St. 75, 82-83. Although civil contempt sanctions are in that sense prospective in nature, we can find no cases which permit such sanctions in the absence of a finding that the contemnor has violated the court order in the past.

It has been stated that "[t]here is, in our jurisprudence, no doctrine of 'anticipatory contempt,' " *United States* v. *Bryan* (1950), 339 U. S. 323, 341, and that "an adjudication of contempt should relate to past conduct, not prospective conduct," *Wright* v. *Wright* (Fla. App. 1976), 331 So. 2d 395. The rationale for such a stance is clear, and the majority of this court adopt such principle as being a reasonable application of the law of civil contempt.

It is a fundamental principle of our legal system that a person should not be incarcerated for the mere intention to commit an unlawful act. In the typical civil contempt case, the individual is ordered to perform an act, and if he refuses *at a time when performance is due,* his refusal is itself a con-

tumacious act, and he may be imprisoned until he agrees to purge the contempt. See, *e.g., Shillitani* v. *United States* (1966), 384 U. S. 364. The refusal to perform an act ordered by the court, at a time when the obligation to perform has matured, concretely demonstrates the contemnor's willingness to defy the law, and justifies his incarceration.

Where, however, the time for performance has not arrived, the intention not to perform is not an act in defiance of the court order; it remains, in legal effect, a state of mind. One may perform at the time performance is judicially mandated, notwithstanding a previous statement to the contrary. *Crystal, Petitioner* (1953), 330 Mass. 583, 590, 116 N.E. 2d 255. Alternatively, the obligation to perform may never mature. *Id.* Finally, circumstances may intervene which would render performance impossible at the time it is due. *Thomas* v. *Woollen* (1971), 255 Ind. 612, 617, 266 N.E. 2d 20; *Wright, supra,* at page 395.

We hold that prior disobedience of a trial court's order is a necessary antecedent to a court's imposition of coercive sanctions in the exercise of its civil contempt powers against future non-compliance with such order.

A finding of contempt is as reasonably a condition precedent to the imposition of coercive sanctions aimed at effectuating performance of an act as is a finding of contempt a condition precedent to imposing coercive sanctions seeking non-performance of an act.

In this case, the court order was, for the most part, injunctive in its phraseology; it ordered appellants to refrain from specified conduct. The only affirmative performance required by the order, although this too was stated in the negative, was appellants' attendance at classes. This obligation would not mature until Monday, April 10, two days after the contempt hearing. To anticipate that a contempt would occur on that date was improper. A person cannot be required to purge a contempt which has not yet taken place.

In regard to that part of the temporary restraining order which required forbearance from certain acts such as picketing and interfering with appellee's operations, there was no finding that any of the individuals before the court had com-

mitted acts in violation thereof. Absent such a finding, the trial court exceeded its authority in incarcerating appellants. Just as the trial court could not anticipate a contemptuous refusal to act, neither could it anticipate the performance of a contemptuous act.

The Court of Appeals, however, affirmed the order of incarceration on a somewhat different theory. That court concluded that the temporary restraining order commanded appellants to refrain from specified conduct, stating that "[r]ather than requiring an affirmative action, compliance with the temporary restraining order entailed forbearance." Somewhat inconsistently, the court then justified appellants' incarceration on the basis of a direct contempt for refusing to perform an affirmative act: the signing of the affidavit. We do not agree that the refusal to sign the affidavit could be considered to encourage or condone the strike, punishable as a direct contempt committed in the presence of the court. Nor do we consider the answers of the teachers in advance of the date of compliance to materially violate the integrity of the court's order, or to lessen the court's capability to effect the purposes of a preliminary injunction against what was found to be an illegal strike activity.

Where a trial court has not adjudged parties to be in contempt for their past conduct, and where the time for the court-ordered performance of a certain act has not yet arrived, a trial court's order of incarceration is premature and is not sustainable upon a theory of prospective contempt.

We therefore reverse that portion of the decision of the Court of Appeals which affirmed the order of incarceration.

## II.

The cross-appeal in this cause concerns that portion of the trial court's contempt order which prospectively assessed a fine of $500 per day, commencing April 10, 1978, against those teachers who refused to sign the affidavit presented to them by the court. The Court of Appeals reversed that portion of the order on the basis that such a sanction was not authorized by R. C. 2705.06.*

---

* R. C. 2705.06 provides as follows:

The board, as cross-appellant, contends that the inherent authority of the judiciary to impose fines for civil contempt cannot be limited or abridged by the General Assembly. Cross-appellant's contention is implicitly premised upon a constitutional claim of separation of powers. However, because a disposition of the cross-appeal may be made without determining this constitutional issue, we decline to address it. Constitutional questions will not be decided until the necessity for their decision arises. *State* v. *Western Union Telegraph Co.* (1951), 154 Ohio St. 511; *State, ex rel. Lieux,* v. *Westlake* (1951), 154 Ohio St. 412; *State, ex rel. Herbert,* v. *Ferguson* (1944), 142 Ohio St. 496.

It appears from the record that the prospective fine conditionally assessed by the trial court was principally intended to coerce cross-appellees to perform the affirmative act of attending classes on April 10, 1978, and thereafter. While it is true that the fine would not be assessed until the time performance was due, it was still improper for many of the same reasons that cross-appellees' incarceration was found to be objectionable.

Here again, the trial court was anticipating a contempt. Some of the cross-appellees may have found it impossible to perform the act required of them. Alternatively, the strike may have been settled before performance was due. As was stated by the Supreme Court of Indiana in *Thomas, supra,* at page 617:

"* * *To anticipate the breach, assess the penalty and provide for the execution, it appears to us, amounts to the abandonment by the trial court of its responsibility in this area and should not be sanctioned."

Cross-appellant argues that any difficulties which might have arisen could have been cured at a subsequent mitigation hearing. We believe cross-appellant has placed the cart before the horse. It seems to us anomalous at best for cross-appellees to bear the burden of showing mitigating circumstances for a contempt which has never been established.

---

"When the contempt consists of the omission to do an act which the accused yet can perform, he may be imprisoned until he performs it."

298

The fine prospectively assessed against cross-appellees was improper absent a finding that they had committed contemptuous acts in the past. We therefore affirm that portion of the decision of the Court of Appeals which reversed the order assessing prospective fines.

*Judgment reversed in part*
*and affirmed in part.*

CELEBREZZE, C. J., HERBERT, P. BROWN, SWEENEY and LOCHER, JJ., concur.

W. BROWN, J., dissents.