**VENHAM et al., Appellants,**

v.

**ASTROLITE ALLOYS et al., Appellees.**

[Cite as *Venham v. Astrolite Alloys* (1991), 73 Ohio App.3d 90.]

Court of Appeals of Ohio,
Washington County.

No. 89CA37.

Decided April 16, 1991.

**91**

*Handelman & Kilroy, Mary J. Kilroy* and *Robert Karl Handelman;*
*Barkan & Neff* and *Sanford A. Meizlish,* for appellants.

*Day, Kellerer, Raley, Wright & Rybolt* and *John A. Murphy, Jr.,* for appellee Inco Alloys International, Inc.

*Lane, Alton & Horst, Jeffrey W. Hutson, Theodore M. Munsell* and *T. Jeffrey Beausay,* for appellees Hobart Brothers Company and Teledyne McKay.

*Isaac, Brandt, Ledman & Becker* and *James Ledman,* for appellee Stoody Co., d.b.a. Stoody Deloro Stellite, Inc.

*Hanlon, Duff & Paleudis Co., L.P.A.,* and *Gerald P. Duff,* for appellee Lincoln Electric Company.

*McCurdy, Johnson, Ruggiero, McKenzie & Bender* and *Daniel P. Ruggiero,* for appellee Arcos, Division of Hoskins.

*Mollica, Gall, Sloan & Sillery Co., L.P.A.,* and *Robert J. Gall,* for appellee Tri–Mark, Inc.

*Janik & Bell* and *Kenneth J. Knake,* for appellee Sandvik, Inc.

*Arter & Hadden* and *John P. Gartland,* for appellee Alloy Rods, Inc.

*Earl, Warburton, Adams & Davis* and *Dick M. Warburton, Jr.,* for appellee Interstate Supply Company, Inc.

*Israel & Wood* and *James W. Harvey,* for appellee Techalloy Maryland, Inc.

*Micheli & Baldwin* and *Frank J. Micheli,* for appellee Virginia Welding Supply Company.

*Porter, Wright, Morris & Arthur* and *Mark K. Merkle, Jr.,* for appellee Armco, Inc.[1]

*Porter, Wright, Morris & Arthur* and *James S. Oliphant,* for appellee B.O.C. Group, a.k.a. AIRCO.

---

Stephenson, Judge.

This is an appeal from a judgment entered by the Washington County Court of Common Pleas dismissing two complaints filed by Daniel Venham and Elizabeth Venham, plaintiffs below and appellants herein, upon motions for summary judgment filed by, *inter alia,* the parties designated above as appellees on the grounds that the complaints were not filed within two years as required by the statute of limitations set forth in R.C. 2305.10. The following error is assigned:

---

1. Armco, Inc. was dismissed with prejudice from the present appeal on or about April 17, 1990.

"I. The trial court below erred in granting judgment on the grounds that the complaints were not timely filed.

"A. The court below erred in its failure to apply the discovery rule in determining the date of the Plaintiff–Appellant's cause of action, where the Plaintiff–Appellant's bodily injury was not immediately apparent, but was a slow, insidious process, the cause of which was difficult to ascertain.

"B. The court below erred in failing to recognize that the discovery rule applies to all actions filed under 2305.10, and is not restricted to asbestos, DES, and agent orange.

"C. The court below erred in dismissing the consortium claim of Elizabeth Venham, which was filed within four years of her husband's last exposure to the toxic substance, and is timely notwithstanding the trial court's failure to apply the discovery rule."

The following facts are pertinent to this appeal. Appellants filed two complaints in the Washington County Court of Common Pleas. The first, filed on May 21, 1986, named as defendants Daniel Venham's employer, Dravo Corporation,[2] and four other companies, including three appellees herein. The second complaint, filed on February 24, 1987, named as defendants twenty-four companies, including the remaining appellees herein.[3] All of the parties in both actions, other than Dravo Corporation, were averred to be "engaged in the business of designing, constructing, manufacturing, selling and/or distributing welding rods, electrodes, and/or welding wire."

In their complaints, appellants alleged that appellant Daniel Venham was employed by Dravo Corporation from November 1973 to February 1974 and again from February 1980 to September 1982 as a weld grinder. His work station was immediately adjacent to the welding operations. Appellants alleged that appellant Daniel Venham was exposed to toxic levels of manganese in dust and fumes from welding rods, electrodes and/or welding wire used in the welding operations.

Appellants further averred that in February 1981, appellant Daniel Venham began to experience some neurological problems causing him to miss work for several months. When the symptoms subsided, he returned to Dravo Corporation; however, the symptoms soon returned and are apparently permanent. Daniel Venham was forced to quit in September 1982 due to these symptoms. The condition was subsequently diagnosed as manganese toxicity Parkinson's

---

2. Dravo Corporation was subsequently dismissed from the action on November 2, 1989.

3. The two actions were consolidated by entry on October 11, 1988.

syndrome. Appellants sought compensatory damages both for his injuries and for the loss of consortium to Elizabeth Venham.

Between September 15, 1988 and February 6, 1989, numerous motions for summary judgment, including motions by all appellees herein, were filed on the ground that appellants' claims were barred by the relevant statutes of limitations. On August 24, 1989, the court below rendered a decision wherein it granted appellees' motions for summary judgment. The decision was journalized in an entry filed on November 2, 1989.

In their sole assignment of error, appellants contend that the court below erred in holding that the discovery rule was not applicable to the case at bar and in holding that the cause of action arose in November 1981. Appellants argue instead that the discovery rule did apply and, accordingly, the statute of limitations did not begin to run until June 1985 when Dr. Eileen Storey diagnosed appellant Daniel Venham as suffering from manganese toxicity Parkinson's disease. Appellants, therefore, conclude that the court below erred in granting summary judgment when in fact both complaints were filed within two years as required by the statute of limitations set forth in R.C. 2305.10.[4]

Summary judgment should not be granted unless there is no genuine issue of material facts, and, in construing those facts most strongly in favor of the nonmoving party, the court can come to but one conclusion and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

---

**4.** R.C. 2305.10 reads as follows:

"An action for bodily injury or injuring personal property shall be brought within two years after the cause thereof arose.

"For purposes of this section, a cause of action for bodily injury caused by exposure to asbestos or to chromium in any of its chemical forms arises upon the date on which the plaintiff is informed by competent medical authority that he has been injured by such exposure, or upon the date on which, by the exercise of reasonable diligence, he should have become aware that he had been injured by the exposure, whichever date occurs first.

"For purposes of this section, a cause of action for bodily injury incurred by a veteran through exposure to chemical defoliants or herbicides or other causative agents, including agent orange, arises upon the date on which the plaintiff is informed by competent medical authority that he as been injured by such exposure.

"As used in this section, 'agent orange,' 'causative agent,' and 'veteran' have the same meanings as in section 5903.21 of the Revised Code.

"For purposes of this section, a cause of action for bodily injury which may be caused by exposure to diethylstilbestrol or other nonsteroidal synthetic estrogens, including exposure before birth, arises upon the date on which the plaintiff learns from a licensed physician that he has an injury which may be related to such exposure, or upon the date on which by the exercise of reasonable diligence he should have become aware that he has an injury which may be related to such exposure, whichever date occurs first."

█ The first issue involved in the case *sub judice*, however, does not involve a factual question but instead a legal one, *i.e.*, whether the discovery rule is applicable to the case at bar. The discovery rule was first adopted in Ohio by the Ohio Supreme Court in *Melnyk v. Cleveland Clinic* (1972), 32 Ohio St.2d 198, 61 O.O.2d 430, 290 N.E.2d 916. *Melnyk* involved a patient who had surgery wherein a surgeon left a metallic forceps and a sponge in the patient's abdomen. This fact was not discovered for ten years. In holding that the patient's cause of action was not time barred, the court held the following in the syllabus:

"Where a metallic forceps and a nonabsorbent sponge are negligently left inside a patient's body during surgery, the running of the statute of limitations governing a claim therefor is tolled until the patient discovers, or by the exercise of reasonable diligence should have discovered, the negligent act. (*Wyler v. Tripi*, 25 Ohio St.2d 164 [54 O.O.2d 283], 267 N.E.2d 419, distinguished.)"

*Melnyk* applied the discovery rule in the medical malpractice context. In *O'Stricker v. Jim Walter Corp.* (1983), 4 Ohio St.3d 84, 4 OBR 335, 447 N.E.2d 727, the Ohio Supreme Court extended the scope of the rule to actions for bodily injury which are governed by the statute of limitations set forth in R.C. 2305.10. The plaintiff in *O'Stricker* suffered from squamous cell carcinoma of the larynx claimed to be caused by exposure to asbestos contained in fireproofing materials with which the plaintiff had worked. The plaintiff filed his action in 1979. The trial court found that the plaintiff's last exposure to asbestos occurred in 1973 and, therefore, held that the claim was barred by the two-year statute of limitations set forth in R.C. 2305.10.[5] The Supreme Court, in determining that the claim was not barred, held that it would be manifestly unfair to start the statute of limitations running from the last exposure when symptoms may not manifest themselves for up to thirty years following the last exposure. Under such circumstances, the court in *O'Stricker, supra*, held that the following rule set forth in paragraph two of the syllabus should be applied:

"When an injury does not manifest itself immediately, the cause of action does not arise until the plaintiff knows or, by the exercise of reasonable diligence should have known, that he had been injured by the conduct of defendant, for purposes of the statute of limitations contained in R.C. 2305.-10."

---

5. At the time the Supreme Court considered *O'Stricker*, R.C. 2305.10 had been amended to make the discovery rule applicable in cases involving asbestos or chromium exposure. See Am.H.B. No. 716 (138 Ohio Laws, Part II, 3412). However, although the court discussed the amendment, it was not applicable to that case.

R.C. 2305.10 has been amended twice since *O'Stricker, supra.* In Am.Sub. S.B. No. 406 (139 Ohio Laws, Part I, 866–877), the General Assembly made the discovery rule applicable to cases wherein there was exposure to agent orange or other defoliants, herbicides, or causative agents. Then, in Am.Sub.H.B. No. 72 (140 Ohio Laws, Part I, 1767–1768), the General Assembly further expanded the discovery rule to include situations involving exposure to die-thylstilbestrol (DES) and other nonsteroidal synthetic estrogens.

Since R.C. 2305.10 is silent with respect to manganese, but, as noted *supra,* allows for use of the discovery rule in cases involving exposure to certain other substances such as asbestos, agent orange, etc., appellees urge this court to follow the maxim of *"expressio unius est exclusio alterius"*—*i.e.,* the express inclusion of one thing means the exclusion of others. See, *e.g., Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 181, 546 N.E.2d 206, 211; *Fort Hamilton–Hughes Memorial Hosp. Ctr. v. Southard* (1984), 12 Ohio St.3d 263, 265, 12 OBR 342, 343, 466 N.E.2d 903, 905; *State ex rel. Boda v. Brown* (1952), 157 Ohio St. 368, 372, 47 O.O. 262, 264, 105 N.E.2d 643, 646. In other words, appellees contend that since the General Assembly specifically included in R.C. 2305.10 provisions making applicable the discovery rule to cases involving exposure to certain substances, the discovery rule is inapplicable in cases involving exposure to all other substances, including manganese.

We are unpersuaded by appellees' argument. The version of R.C. 2305.10 which the Ohio Supreme Court in *O'Stricker* considered contained no discovery rule. The court judicially formulated a discovery rule for all cases where the claimed injury does not manifest itself immediately. It is a well-settled legal principle that a legislative act will not abrogate common-law rules unless the legislation does so by express language. See, *e.g., Shrader v. Equitable Life Assur. Soc.* (1985), 20 Ohio St.3d 41, 44, 20 OBR 343, 345, 485 N.E.2d 1031, 1034; *Frantz v. Maher* (1957), 106 Ohio App. 465, 471–472, 7 O.O.2d 209, 212–213, 155 N.E.2d 471, 476; *Bailey v. Container Corp. of America* (S.D.Ohio 1986) 660 F.Supp. 1048, 1055. Therefore, since the amended versions of R.C. 2305.10 did not expressly limit the discovery rule to certain listed situations, the discovery rule announced in *O'Stricker* continues to be applicable.

The Supreme Court recognized this continued viability of the discovery rule in *Investors REIT One, supra,* 46 Ohio St.3d at 181, 546 N.E.2d at 210, where, even though it embraced the doctrine of *expressio unius est exclusio alterius,* the court specifically noted that the court had "expanded the discovery rule incorporated into R.C. 2305.10 to include general claims of bodily injury, when the claimed injury does not manifest itself immediately." Finally, we note that several courts applying Ohio law have implemented the *O'Stricker*

discovery rule in situations involving substances other than those specifically set forth in R.C. 2305.10. See *Viock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7, 13 OBR 8, 467 N.E.2d 1378 (injuries caused by exposure to several substances including petroleum naphtha, ketone, toluene, xylene, isobutyl ketone, hexane and heptane); *Cacciacarne v. G.D. Searle & Co.* (C.A. 6, 1990), 908 F.2d 95 (injuries caused by an intrauterine device [IUD]); *Long-mire v. Upjohn Co.* (S.D.Ohio 1988), 686 F.Supp. 659 (injuries caused by the prescription drug Depo–Provera); *Moldovan v. Lear Siegler, Inc.* (N.D.Ohio 1987), 672 F.Supp. 1023 (injuries caused by exposure to para alpha napthyla-mine and triortho cresyl phosphate); *Wack v. Lederle Laboratories* (N.D.Ohio 1987), 666 F.Supp. 123 (injuries caused by diphtheria and tetanus toxoids and pertussis [DTP] vaccine).

█ Notwithstanding that the discovery rule formulated in *O'Stricker* has continued viability, we must still determine whether the rule is applicable to the particular facts in the case *sub judice, i.e.,* whether the injury is one where the symptoms did not immediately manifest themselves. While the period between exposure and symptoms is not anywhere near as long as it is in the case of asbestos exposure, we believe that the case at bar does fall within the category of injuries encompassed by the *O'Stricker* decision.

Appellant Daniel Venham first worked for Dravo Corporation as a weld grinder from November 1973 until February or March 1974. During that period he suffered no symptoms. He then went back to work for Dravo in February 1980 as a weld grinder. Although he worked in the polyurethane department for a couple of weeks in 1981 and also did other jobs on occasion, Venham stated that all but approximately five percent of his time was spent as a grinder. At some point early in 1981, Venham began to experience various symptoms. He took a voluntary layoff from April 1981 until August 1981, during which his condition improved. Venham went back to work, but in several months the symptoms reappeared. In September 1982, Venham quit working for Dravo permanently. Since there were several months between the exposure to manganese and the onset of symptoms, the symp-toms did not manifest themselves immediately and, accordingly, pursuant to *O'Stricker*, the discovery rule is applicable.

We, therefore, hold that the court below erred in holding that the discovery rule was inapplicable to the case at bar. However, this conclusion is not dispositive of all issues pertinent to this appeal. It must still be determined whether there is any question of material fact as to when Venham knew or should have known that he had been injured by being exposed to manganese.

█ Venham was for the most part diligent in attempting to discover the cause of his symptoms. He went to several doctors and it was not until June

1985 that Dr. Eileen Storey made a firm diagnosis that Venham suffered from manganese poisoning. However, it is not necessary that a firm diagnosis be made; several courts, in interpreting the discovery rule for R.C. 2305.11, which is used for cases involving medical malpractice, have held that what is necessary is that a cognizable event occur from which a reasonable person would be alerted that improper treatment had taken place. See, *e.g.*, *Allenius v. Thomas* (1989), 42 Ohio St.3d 131, 538 N.E.2d 93; *Hershberger v. Akron City Hosp.* (1987), 34 Ohio St.3d 1, 516 N.E.2d 204. The analogy in the case at bar is to a cognizable event from which appellants should have known that Daniel Venham's symptoms were caused by exposure to manganese in his workplace.

Daniel Venham was told that he was suffering from Parkinson's disease of unknown origin by Dr. Barry Louden in 1981. This alone would have been insufficient to satisfy the requirements of the *O'Stricker* discovery rule since there was no indication as to the cause of the disease. However, sometime in 1982 or 1983, Venham read a magazine article which indicated a connection between exposure to manganese and Parkinson-like symptoms. He discussed this with Dr. Louden at an office visit on March 28, 1983, who then set up a twenty-four-hour urine test to check for the presence of heavy metals. Venham never had the test conducted. Venham claimed that Dr. Louden told him that the test would probably not be particularly beneficial because even if he had been exposed to manganese, sufficient time had passed that it was possible that no manganese would show up in the urine. Venham never returned to see Dr. Louden.

This might be adequate evidence from which a trier of fact could find that Venham had sufficient knowledge as of March 1983 to start the statute of limitations running. However, in viewing the facts in a manner most favorable to appellants, as required by Civ.R. 56 when considering summary judgment motions, we are led to the conclusion that no cognizable event occurred until June 1985, when Dr. Storey made her diagnosis. Therefore, the statute of limitations did not begin to run until June 1985 and, thus, the complaints were timely filed. Accordingly, the court below erred in granting summary judgment in favor of appellees.[6]

■ We note that appellants also assert two further arguments. First, they contend that the statute of limitations should have been tolled because appellees concealed the fact that the welding rods contained manganese and

---

6. We note that the analysis herein is also pertinent to Elizabeth Venham's loss of consortium claim. The statute of limitations for loss of consortium, which is codified in R.C. 2305.09 and allows four years to file a claim, begins to run on the same date as Daniel Venham's claims. See *Hershberger, supra,* 34 Ohio St.3d at 6, 516 N.E.2d at 208.

that manganese was toxic. "Facts alleged showing mere concealment are not sufficient * * * to toll the statute [of limitations]." *Investors REIT One, supra,* 46 Ohio St.3d at 182, 546 N.E.2d at 211. Hence, appellants' first argument is meritless. Second, appellants contend that R.C. 2305.10 as applied by the court below is unconstitutional. With respect to this argument, we note that since we are sustaining their assignment of error for other reasons, it is unnecessary to address the constitutional question and, thus, we decline to do so. See *Marich v. Knox Cty. Dept. of Human Serv.* (1989), 45 Ohio St.3d 163, 167, 543 N.E.2d 776, 780–781, rehearing denied (1989), 45 Ohio St.3d 715, 545 N.E.2d 909; *Hal Artz Lincoln–Mercury, Inc. v. Ford Motor Co.* (1988), 28 Ohio St.3d 20, 28 OBR 83, 502 N.E.2d 590, paragraph two of syllabus; *Bd. of Edn. v. Brunswick Edn. Assn.* (1980), 61 Ohio St.2d 290, 297, 15 O.O.3d 352, 356, 401 N.E.2d 440, 445; *Norvell v. Cuyahoga Cty. Hosp.* (1983), 11 Ohio App.3d 70, 73, 11 Ohio App.3d 70, 72, 463 N.E.2d 111, 115.

For the aforementioned reasons, appellants' assignment of error is sustained, the judgment of the court below is reversed, and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

GREY and HARSHA, JJ., concur.