OPINION
{¶ 1} Defendant-appellant William Gardner [hereinafter appellant] appeals from the judgment of the Licking County Court of Common Pleas which awarded plaintiffs-appellees Marc and Ginny Clemente [hereinafter appellees] damages for fraudulent inducement and negligent misrepresentation in regards to the sale of real property. Appellees presented a cross appeal from the judgment of the Licking County Court of Common Pleas which granted a directed verdict in favor of defendant-cross appellee Anita Gardner.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On April 18, 2001, appellees filed a complaint in the Licking County Court of Common Pleas against appellant, Anita Gardner (appellant's wife) and King Thompson, Holzer-Wollam, Inc. [hereinafter King Thompson], appellant's real estate agency. In the Complaint, appellees alleged fraudulent and negligent misrepresentation, unjust enrichment and fraudulent and negligent concealment of a solid waste landfill located on the real estate sold to appellees by appellant and his wife. Appellees also alleged negligence and breach of fiduciary duty against King Thompson, Inc. An amended complaint was filed on December 26, 2001, containing additional claims against King Thompson, Holzer-Wollam, Inc.
 {¶ 3} On the same day that appellees filed their Complaint, Kurt and Heather Kluth filed a Complaint against appellant, Anita Gardner and King Thompson, Holzer-Wollam, Inc. In the Complaint, the Kluths alleged unjust enrichment and fraudulent and negligent concealment of a solid waste landfill located on the real estate sold to the Kluths by appellant and his wife. The Kluths also alleged negligence and breach of fiduciary duty against King Thompson, Inc. An amended complaint was filed on December 26, 2001, also contained an additional three claims against King Thompson, Holzer-Wollam, Inc. The Kluth case was assigned case number 01CV0331GLF.
 {¶ 4} Appellees filed a motion to consolidate their case with the Kluth case for purposes of trial. Appellant, Anita Gardner and King Thompson, Inc, opposed the consolidation. On September 14, 2001, the trial court granted the motion to consolidate.
 {¶ 5} On June 19, 2002, the trial court granted a motion for summary judgment in favor of King Thomspon. Upon denial of all other pending motions for summary judgment, the matter went to trial on the claims of fraudulent inducement and negligent misrepresentation. At the end of the third day of trial, the trial court granted Anita Gardner's motion for a directed verdict and denied appellant's motion for directed verdict. At the end of the case, appellant again renewed his motion for directed verdict but the trial court denied the motion.
 {¶ 6} The jury returned a verdict for appellees. The jury concluded that appellant had committed fraudulent inducement and negligent misrepresentation against both appellees and the Kluths. The jury awarded appellees $625,000.00 in compensatory damages for fraudulent inducement, $25,000.00 for mental suffering and $53,766.00 in compensatory damages for negligent misrepresentation, for a total of $703,766.00.[1] However, the jury did not award any punitive damages or attorney fees. On November 12, 2002, the trial court journalized the verdict.
 {¶ 7} It is from the November 12, 2002, Judgment Entry that appellant appeals, raising the following assignments of error:
 {¶ 8} "I. The trial court erred in consolidating the case of Kluthv. Gardner, Case No. 01CVO331GLF, with the instant case, and the court abused its discretion when granting consolidation because there was no commonality of issues, and trying both cases to a jury caused jury confusion and prejudice.
 {¶ 9} "II. The trial court erred by failing to grant defendant-appellant's motion for summary judgment since the plaintiff-appelles' claims were barred by Ohio Revised Code [Sec.]2305.09(C) and [Sec.] 2305.07, as well as the Doctrine of Caveat Emptor and the Parol Evidence rule.
 {¶ 10} "III. The trial court erred by not directing a verdict for the defendant-appellant at the end of the plaintiff-apellees' case and at the end of all the evidence because the plaintiff-appellees' claims were barred by [sec.] 2305.09, lack of justifiable reliance and the Doctrine of Caveat Emptor.
 {¶ 11} "IV. The Court Erred In Not Directing A Verdict Against plaintiff-appellees At The End Of The Plaintiff-appellees' Case And At The End Of All The Evidence Because Plaintiff-appellees Failed To Prove Any Damages As A Matter Of Law.
 {¶ 12} "V. The Trial Court Erred By Refusing To Submit To The Jury Defendant-appellants' Requested Interrogatories Which Would Require The Jury To Describe The Conduct Of Which The Defendant Was Guilty Should They Find For The Plaintiff-appellees On The Issues Of Fraudulent Inducement And Negligent Misrepresentation. The Jury's Verdict Was Not Properly Tested By Means Of Interrogatories Requested By Defendant-appellant, And Accordingly The Jury's Verdict Cannot Be Permitted To Stand."
 {¶ 13} Marc and Ginny Clemente filed a cross appeal. The following sole assignment of error was raised on cross appeal:
 {¶ 14} "The Trial Court Erred In Directing A Verdict That Cross-appellee Anita Gardner Was Not Vicariously Liable For Appellant William Gardner's Fraud And Negligent Misrepresentation."
 I {¶ 15} In the first assignment of error, appellant argues that the trial court abused its discretion when it consolidated the Clemete case with the Kluth case. We disagree.
 {¶ 16} A consolidation of cases lies within the sound discretion of the trial court. Director of Highways v. Kleines (1974),38 Ohio St.2d 317, 313 N.E.2d 370. The Supreme Court has defined abuse of discretion as implying that the court's attitude is unreasonable, arbitrary or unconscionable, see e.g., Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 17} Consolidation of cases is controlled by Civ.R. 42(A). Civil Rule 42(A) states as follows: "When actions involving a common question of law or fact are pending before a court, that court after a hearing may order a joint hearing or trial of any or all the matters in issue in the actions; it may order some or all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."
 {¶ 18} Thus, the issue is whether the trial court abused its discretion when it found that the actions shared a common question of law or fact. In this case, both the Kluths and the Clementes claimed that the Gardners failed to disclose the same closed, public landfill on the same piece of property that the Gardners had divided into two parcels. The Kluths and the Clementes each purchased one of those parcels. Many of the same witnesses, documents and evidence were presented in both cases. This court is cognizant that there were questions of law and fact that were not common between the cases. However, not all questions of law and fact must be identical to be consolidated pursuant to Civ.R. 42. Under the circumstances herein, we find that the trial court did not abuse its discretion in consolidating the cases.
 {¶ 19} Appellant's first assignment of error is overruled.
 II {¶ 20} In the second assignment of error, appellant contends that the trial court erred when it denied appellant's motion for summary judgment. We disagree.
 {¶ 21} In his motion for summary judgment, appellant argued that appellees' claims were barred by the statute of limitations as well as the doctrine of caveat emptor and the parole evidence rule.
 {¶ 22} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. Civil Rule 56 concerns summary judgment and provides the following, in pertinent part:
 {¶ 23} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation, and only from the evidence, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 24} It is based upon this standard that we review appellant's assignments of error.
 {¶ 25} We will first address appellant's statute of limitations issue. Revised Code 2305.09 provides that a cause of action for fraud or negligent misrepresentation shall be brought within four years after the cause thereof accrued. See Washington v. Spitzer Management, Inc.,
Cuyahoga App. No. 81612, 2003-Ohio-1735. The Ohio Supreme Court in interpreting R.C. 2305.09 has held that the four-year limitation period does not commence to run on claims presented in fraud until the victim of the fraud has discovered, or should have discovered the fraud. InvestorsREIT One v. Jacobs (1989), 46 Ohio St.3d 176, 546 N.E.2d 206, paragraph 2b of the syllabus; Venham v. Astrolite Alloys (1991), 73 Ohio App.3d 90,596 N.E.2d 585, motion to certify overruled (1991), 62 Ohio St.3d 1422,577 N.E.2d 1105. No more than a reasonable opportunity to discover the misrepresentation is required to start the period of limitations. Information sufficient to alert a reasonable person to the possibility of wrongdoing gives rise to a party's duty to inquire into the matter with due diligence. Id.; see Flowers v. Walker (1992), 63 Ohio St.3d 546,589 N.E.2d 1284. Appellant essentially limits his arguments to whether appellees had notice of the dumping on the property, thereby triggering the running of the four year statute of limitations.
 {¶ 26} Appellant maintains that appellees were given notice of the dumping, both orally and in a written form, and conducted their own investigation of the site.[2] Specifically, appellant told appellees that "[t]here's about a 30-square-foot area or so that a farmer had dumped some equipment, some fencing in that spot." Marc Clemente Sept. 18, 2001, Deposition, pg. 15. In addition, the residential property disclosure sheet associated with the sale of the land and signed by appellant included the following disclosure: "L) Other Known Material Defects: The following are other known material defects currently in or on the property: An area close to the spot marked with an X with a box around it was at one time (perhaps over 40 years ago) used to bury stuff. This has been covered over and grassed for many years. There are no known problems with this area. It is in the low dipped area." Appellant also points out that appellee Marc Clemente admitted that he was aware that it was not uncommon to find dumping on rural property.
 {¶ 27} We find that there was no notice given to appellees by appellant sufficient to trigger the running of the statute of limitations. See Hamilton v. Ohio Savings Bank (1994), 70 Ohio St.3d 137,637 N.E.2d 887. The notice provided by appellant that there was "dumping" at the site by a farmer or that the property was used to "bury stuff" is insufficient to put appellees on notice that the site was used as a landfill in the past. Therefore, appellant's arguments fail.
 {¶ 28} Appellant also argues that summary judgment should have been granted based upon application of the caveat emptor doctrine. We disagree.
 {¶ 29} First, appellant claims, in essence, that appellees purchased the land in an "as is" condition pursuant to the language of the purchase contract. Appellant cites the following portion of the contract as an "as is" clause:
 {¶ 30} "12. Miscellaneous: Buyer has examined all property involved and, in making this offer, is relying solely upon such examination with reference to the condition, character and size of land and improvements and fixtures, if any. This contract constitutes the entire agreement and there are no representations, oral or written, which have not been incorporated herein."
 {¶ 31} In Ohio, a seller may be liable for nondisclosure of a latent defect where the seller is under a duty to disclose facts and fails to do so.[3] Brewer v. Brothers (1992), 82 Ohio App.3d 148,151-152, 611 N.E.2d 492, 611 N.E.2d 492 (citing Miles v. McSwegin
(1979), 58 Ohio St.2d 97, 100-101, 388 N.E.2d 1367, 1369-1370). Generally, an "as is" clause in a real estate contract places the risk upon the purchaser as to the existence of defects. It relieves the seller of any duty to disclose. Id. However, an "as is" clause does not bar a claim for "positive" fraud, a fraud of commission rather than omission. An "as is" clause cannot be relied upon to bar a claim for fraudulent misrepresentation or fraudulent concealment. Id. Thus, an "as is" clause bars claims for passive non-disclosure. Traverse v. Long (1956),165 Ohio St. 249, 135 N.E.2d 256; Kaye v. Buehrle (1983),8 Ohio App.3d 381, 383, 457 N.E.2d 373.
 {¶ 32} However, the clause relied upon by appellant is not an "as is" clause. The clause does not state that the buyer is purchasing the property in an "as is" condition. Rather, the clause concerns any representations that may or may not have been made and acts as a form of integration clause. Therefore, we find that there is no "as is" clause.
 {¶ 33} Appellant also contends that the doctrine of caveat emptor bars appellees' claims. In Layman v. Binns (1988), 35 Ohio St.3d 176,519 N.E.2d 642, syllabus, the Ohio Supreme Court stated:
 {¶ 34} "The doctrine of caveat emptor precludes recovery in an action by the purchaser for a structural defect in real estate where (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor. (Traverse v. Long (1956), 165 Ohio St. 249, 135 N.E.2d 256, approved and followed.)"
 {¶ 35} In this case, the landfill was not readily observable nor discoverable upon reasonable inspection. Further, there was a question of material fact as to whether appellant committed a fraudulent act when he made the statements concerning dumping by a farmer and/or the burying of "stuff". Evidence was presented that appellant knew the land had been part of the Lima Township Landfill, that the Ohio EPA [hereinafter OEPA] had attempted to investigate and discussed their concerns about the landfill with appellant and appellant prohibited testing of and around the landfill. Therefore, we find summary judgment was not appropriate on this issue.
 {¶ 36} Lastly, appellant claims that summary judgment was appropriate under the parole evidence rule. Appellant asserts that the law of Ohio is clear that when a written instrument is clear as to the specific language, that instrument cannot be contradicted by an alleged prior representation, citing Blosser v. Enderline (1925), 113 Ohio St. 121,134, 148 N.E. 393. Thus, appellant contends that the parole evidence rule excludes all prior and contemporaneous representations and negotiations that either contradict or add to the terms of the formal written contract in which the parties have adopted a provision that states the agreement is the exclusive memorial of their agreement.
 {¶ 37} Appellant concludes that because the residential property disclosure sheet made a specific disclosure, supra[4], appellant is prohibited from presenting evidence that appellant made a different statement concerning the use of the property.[5] Further, appellant claims that the language in the purchase agreement executed by the parties which states that "this contract constitutes the entire agreement and there are no representations, oral or written, which have not been incorporated herein" prevents appellees from even claiming that appellant made any false representations or concealments to them.
 {¶ 38} The parole evidence rule is designed to protect the integrity of final, written agreements. Charles A. Burton, Inc. v.Durkee (1952), 158 Ohio St. 313, 109 N.E.2d 265. In general, the parole evidence rule states that "absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements." Galmishv. Cicchini, 90 Ohio St.3d 22, 27, 2000-Ohio-7, 734 N.E.2d 782 (quoting 11 Williston on Contracts (4 Ed. 1999) 569-570, Section 33:4). The parole evidence rule excludes extrinsic evidence "because it cannot serve to prove what the agreement was, this being determined as a matter of law to be the writing itself." Id. "If contracting parties integrate their negotiations and promises into an unambiguous, final, written agreement, then evidence of prior or contemporaneous negotiations, understandings, promises, representations, or the like pertaining to the terms of the final agreement are generally excluded from consideration by the court."Bollinger v. Mayerson (1996), 116 Ohio App.3d 702, 712, 689 N.E.2d 62
(citing Durkee, 158 Ohio St. 313, at paragraph two of the syllabus).
 {¶ 39} However, even if we assume arguendo that the parole evidence rule is applicable as appellant argues, the parole evidence rule cannot prevent a party from introducing extrinsic evidence for the purpose of proving fraudulent inducement. See Galmish v. Ciccihini, supra. It "was never intended that the parole evidence rule could be used as a shield to prevent the proof of fraud, or that a person could arrange to have an agreement which was obtained by him through fraud exercised upon the other contracting party reduced to writing and formally executed, and thereby deprive the courts of the power to prevent him from reaping the benefits of his deception or chicanery." Galmish v.Cicchini, supra. (citing 37 American Jurisprudence 2d (1968) 621-622, Fraud and Deceit, Section 451). We find this logic applicable to issues of fraudulent inducement and negligent misrepresentation. This court finds that there was a genuine issue of material fact as to whether appellant committed fraudulent inducement or negligent misrepresentation. As such, appellant was not entitled to a grant of summary judgment.
 {¶ 40} Appellant's second assignment of error is overruled.
 III {¶ 41} In the third assignment of error, appellant claims that the trial court erred by not directing a verdict for appellant at the end of appellees' case and at the end of all of the evidence because appellees' claims were barred by R.C. 2305.09, lack of justifiable reliance and the doctrine of caveat emptor. We disagree.
 {¶ 42} Appellant again argues that the statute of limitations began to run when appellees were given notice of the prior dumping and conducted their own investigation.[6] Appellant also argues that the evidence showed that the purchase agreement included the following "as is" clause: "14. Miscellaneous: Buyer has examined all property involved and, in making this offer, is relying solely upon such examination with reference to the condition, character and size of land and improvements and fixtures, if any. This contract constitutes the entire agreement and there are no representations, oral or written, which have not been incorporated herein." Lastly, appellant asserts that the evidence showed that appellees did not rely upon appellant's alleged false assertions and thus, one of the elements of fraudulent inducement and negligent concealment was not met.[7]
 {¶ 43} Under Civ.R. 50(A) and (B), the standard of review of a ruling on a motion for a directed verdict is as follows: "The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions." Posin v.A.B.C. Motor Court Hotel, Inc. (1976), 45 Ohio St.2d 271, 344 N.E.2d 334, This "reasonable minds" test calls upon a court to determine only whether there exists any evidence of substantial probative value in support of the claims of the non-moving party. Wagner v. Roche Laboratories (1996),77 Ohio St.3d 116, 119-120, 671 N.E.2d 252. Our review of the trial court's disposition of these motions is de novo.
 {¶ 44} First, we find that at the conclusion of appellees' case and all of the evidence, especially when construed in favor of the non-moving party (appellees) reasonable minds could conclude that the "notice" given by appellant to appellees was insufficient to trigger the statute of limitations. Second, as stated previously, the so called "as is" clause relied upon by appellant is not an "as is" clause. Third, we find that reasonable minds could disagree as to whether appellees relied upon appellant's false assertions or failure to disclose. Therefore, we find that the trial court did not err in denying appellant's motion.
 IV {¶ 45} In the fourth assignment of error, appellant asserts that the trial court erred in not directing a verdict against appellant at the end of appellees' case and at the end of the evidence because appellees failed to prove damages as a matter of law. Appellant concludes that the jury had to speculate as to damages. We disagree.
 {¶ 46} As stated in assignment of error three, the standard of review on a motion for a directed verdict is as follows: "The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions." Posin, supra. This "reasonable minds" test calls upon a court to determine only whether there exists any evidence of substantial probative value in support of the claims of the non-moving party. Wagner v. Roche Laboratories, supra. Our review of the trial court's disposition of such a motion is de novo.
 {¶ 47} A party injured by fraud or negligent misrepresentation is entitled to recover "the damages sustained by reason of the fraud or deceit, and which have naturally and proximately resulted therefrom."Foust v. Valleybrook Realty Co. (Wood Cty. 1981), 4 Ohio App.3d 164,166, 446 N.E.2d 1122. To prove damages, the owner of the real property is fully competent to testify about the market value of his or her real property. Smith v. Padgett (1987), 32 Ohio St.3d 344, 348, 513 N.E.2d 737. ("Ohio law has long recognized that an owner of either real or personal property is, by virtue of such ownership, competent to testify as to the market value of the property.")
 {¶ 48} Appellee Marc Clemente testified that if he had known of the landfill, he would not have purchased the property. After learning of the landfill and the attendant concerns, Marc Clemente felt that the value of the land was nothing to him. Further, Clemente testified that because the house, barn and water well are within 300 feet of the actual landfill site when any such structures are required to be at least 1000 feet away by EPA regulations, no one is ever going to buy the property. As to actual expenses incurred by Marc Clemente, he testified as follows: the land and buildings on the property cost $540,000.00; the fencing around the property cost $20,000.00 to $25,000.00; testing of the water cost $1,300.00. Lastly, Clemente testified that it would cost a minimum of $500,000.00 to possibly $1.5 million to remove the landfill.
 {¶ 49} Upon review, while we may not find the testimony at trial ideal, we find that it was sufficient to survive a motion for directed verdict.
 {¶ 50} Appellant's fourth assignment of error is overruled.
 V {¶ 51} In the fifth assignment of error, appellant argues that the trial court erred when it refused to submit to the jury interrogatories which were requested by appellant. Appellant sought to submit interrogatories that would require the jury to describe the conduct by which appellant committed fraudulent inducement and negligent misrepresentation in regards to both appellees and the Kluths. Appellant asserts that the verdict was not properly tested by the interrogatories submitted to the jury.
 {¶ 52} Civil Rule 49(B) concerns interrogatories and state as follows:
 {¶ 53} "The court shall submit written interrogatories to the jury, together with appropriate forms for a general verdict, upon request of any party prior to the commencement of argument. Counsel shall submit the proposed interrogatories to the court and to opposing counsel at such time. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the interrogatories shall be submitted to the jury in the form that the court approves. The interrogatories may be directed to one or more determinative issues whether issues of fact or mixed issues of fact and law."
 {¶ 54} Under Rule 49(B), a trial court "retains limited discretion to reject submission of the interrogatories where the request is untimely or the proposed interrogatories are ambiguous, confusing, redundant, or otherwise legally objectionable. Proper jury interrogatories must address determinative issues and must be based upon the evidence presented."Ramage v. Central Ohio Emergency Ser., Inc. (1992), 64 Ohio St.3d 97, paragraph 3 of the syllabus. The trial court retains full discretion to determine the substance and form of the questions. Id. at 107.
 {¶ 55} The record contains the following request for an interrogatory: "Yes, I simply ask that for each of the find — if there — in the interrogatories, when there was a question on each of the claims for there to be a question to each of the — to the jury to describe what acts constituted that particular act, such as the fraudulent act and misrepresentation." Transcript of Proceedings, November 6, 2002, pg. 275.
 {¶ 56} We find that the trial court did not commit reversible error when it failed to give the requested interrogatories. To support reversal of a judgment, any error in refusing to give an interrogatory must be prejudicial. See Smith v. Flesher (1967), 12 Ohio St.2d 107,233 N.E.2d 137.
 {¶ 57} In this case, the trial court issued 22 interrogatories to the jury. These interrogatories asked separate questions as to whether appellant committed fraud or negligent misrepresentation in regards to the Clementes and the Kluths. Further, the interrogatories included separate, specific questions concerning damages incurred by the Clementes and the Kluths.
 {¶ 58} We also note that the record presents these requested interrogatories in terms which are confusing and somewhat unfinished. In this case, we find that the trial court did not commit reversible error in failing to submit the requested interrogatories.
 {¶ 59} Appellant's fifth assignment of error is overruled.
 Cross-Appeal {¶ 60} In their cross-appeal, cross appellants, Marc and Ginny Clemente, argue that the trial court erred in directing a verdict in favor of cross-appellee Anita Gardner. We disagree.
 {¶ 61} As has been stated previously, the standard of review of a ruling on a motion for a directed verdict is as follows: "The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions." Posin, supra. This "reasonable minds" test calls upon a court to determine only whether there exists any evidence of substantial probative value in support of the claims of the non-moving party. Wagner v. Roche Laboratories, supra. Our review of the trial court's disposition of such a motion is de novo.
 {¶ 62} Specifically, cross appellants argue that cross appellee, Anita Gardner (appellant's wife) admitted in her testimony that she authorized appellant to negotiate and make representations for her in regard to the sale of the property to the Clementes. Thus, accordingly to cross appellants, Anita Gardner shared joint and several liability for appellant's conduct. In essence, cross appellants argue that Anita Gardner was the principal and appellant was the agent of Anita.
 {¶ 63} No presumption of agency between a husband and wife arises based merely upon their marital relationship. McSweeney v. Jackson
(1996), 117 Ohio App.3d 623, 630, 691 N.E.2d 303; Sowers v. Birkhead
(1958), 108 Ohio App. 507, 512, 157 N.E.2d 459. Although marriage in itself does not create an agency relationship between a husband and wife, an agency can exist within the context of a marriage. See, e.g.,Ameritech Publishing, Inc. v. Jenkins (Aug. 25, 1993), Montgomery App. No. 13698.
 {¶ 64} We find appellant was not Anita Gardner's agent. "Under Ohio law an agency relationship is a consensual relationship (between two persons) where the agent has the power to bind the principal, and the principal has the right to control the agent. The existence of an agency relationship depends primarily upon the right of the principal to control the agent." Tiefenthalter v. Tiefenthaler, Fairfield App. No. 02 CA 29,2002-Ohio-6438 (citing Amson v. General Motors Corp. (N.D.Ohio, 1974),377 F. Supp. 209).
 {¶ 65} In the case sub judice, Anita Gardner testified that she allowed appellant to make decisions concerning the property in question "because he was more knowledgeable about these kinds of things" and because "that's generally what you do as husband and wife." Anita Gardner basically testified that "I just agreed that he would take care of those matters."
 {¶ 66} Upon review, we find the trial court did not err in granting a directed verdict in favor of Anita Gardner. Her testimony revealed that she permitted her husband to deal with the sale of the property in the context of their relationship as husband and wife. There is no indication that Anita Gardner had any ability to control appellant as her agent.
 {¶ 67} Cross appellants' sole assignment of error is overruled.
 {¶ 68} The judgment of the Licking County Court of Common Pleas is affirmed.
[1] The jury awarded the Kluths $262,000.00 in compensatory damages for fraudulent inducement, $25,000.00 for mental suffering and $42,000.00 in compensatory damages for negligent misrepresentation, for a total of $329,000.00.
[2] Evidence showed that appellees had appellant's realtor, Juanita Furuta, contact the Licking County Health Department to inquire whether the land was suitable for building. Appellees also had the Ohio State University Extension Service walk the land to see if it was suitable for horses. In each case, no information concerning the land's prior use as a landfill was discovered.
[3] A seller has a duty to disclose material facts which are not "readily observable or discoverable through a purchaser's reasonable inspection." Layman v. Binns (1988), 35 Ohio St.3d 176, 178,519 N.E.2d 642, 644; Davis v. Sun Refining and Marketing Co. (1996),109 Ohio App.3d 42, 55, 671 N.E.2d 1049; See also, Miles v. McSwegin
(1979), 58 Ohio St.2d 97, 388 N.E.2d 1367. In determining whether a fact is material, the court must determine if the fact would be likely, "under the circumstances, to affect the conduct of a reasonable person with reference to the transaction in question." Davis v. Sun Refining andMarketing Company, supra; Van Camp v. Bradford (1993), 63 Ohio Misc.2d 245,255, 623 N.E.2d 731, 737-738.
[4] "L) Other Known Material Defects: The following are other known material defects currently in or on the property: An area close to the spot marked with an X with a box around it was at one time (perhaps over 40 years ago) used to bury stuff. This has been covered over and grassed for many years. There are no known problems with this area. It is in the low dipped area."
[5] Namely, that appellant claimed that dumping was done by a farmer or that the areas was limited to 30 feet in diameter.
[6] Evidence showed that appellees had appellant's realtor, Juanita Furuta, contact the Licking County Health Department to inquire whether the land was suitable for building. Appellees also had the Ohio State University Extension Service walk the land to see if it was suitable for horses. In each case, no information concerning the land's prior use as a landfill was discovered.
[7] The tort of fraudulent inducement has the following elements: (1) an actual or implied false representation concerning a fact or, where there is a duty to disclose, concealment of a fact, material to the transaction, (2) knowledge of the falsity of the representation or such recklessness or utter disregard for its truthfulness that knowledge may be inferred, (3) intent to induce reliance on the representation, (4) justifiable reliance, and (5) injury proximately caused by the reliance.Yo-Can, Inc. v. The Yogurt Exchange, Inc., 149 Ohio App.3d 513,2002-Ohio-5194, 778 N.E.2d 80. The elements of negligent misrepresentation are as follows: "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." Delman v. Cleveland Hts.
(1989), 41 Ohio St.3d 1, 4, 534 N.E.2d 835.